Munninghoff, Respondent, vs. Wisconsin Conservation Commission and another, Appellants.*

*June 8—July 12, 1949.*

* Motion for rehearing denied, without costs, on September 13, 1949.

For the appellants there were briefs by the *Attorney General* and *Roy G. Tulane,* assistant attorney general, and oral argument by *Mr. Tulane.*

For the respondent there was a brief by *George A. Richards* of Rhinelander, attorney, and *Adolph Kanneberg* of Madison of counsel, and oral argument by *Mr. Kanneberg.*

A brief *amicus curiae* was filed by *Wm. J. P. Aberg* of Madison.

MARTIN, J. First of all, the court has determined that jurisdiction under ch. 227, Stats., is proper.

It is admitted that the lands upon which Munninghoff desires to operate a muskrat farm are his own lands, and are located under the navigable waters of the Wisconsin river. These waters became navigable by the erection by the Rhinelander Paper Company of a dam in the year 1906, which dam flooded the land in question and it has been flooded since that time.

The issues in this case are whether the Conservation Commission, pursuant to sec. 29.575, Stats., can license privately owned lands lying under navigable waters, and whether such muskrat farming is an incident to navigation.

The muskrat-farm law was originally passed in 1919. We do not consider it necessary to go into the legislative history. However, ch. 430, Laws of 1923, repealed and recreated sec. 29.575, Stats., subs. (1) to (10), inclusive, substantially as it is today. Sub. (1) was amended by ch. 369, Laws of 1925 (which omitted the word "skunks"), and provided:

"The owner or lessee of any lands within the state of Wisconsin suitable for the breeding and propagating of muskrats shall have the right upon complying with the provisions of this

section to establish, operate and maintain on such lands a muskrat farm, for the purpose of breeding, propagating, trapping and dealing in muskrats."

By sec. 1, ch. 150, Laws of 1941, this section was repealed and recreated to read:

"The owner or lessee of any lands or private waters within the state of Wisconsin suitable for the breeding and propagation of muskrats shall have the right upon complying with the provisions of this section to establish, operate, and maintain on said lands or private waters, a muskrat farm for the purpose of breeding, propagating, trapping, and dealing in muskrats. The term private waters as used herein shall mean all waters or streams whether meandered or not which are of a normally shallow, swampy, marshy, or boggy character, not navigable in fact throughout the year by ordinary boats and pleasure craft and which are not of any substantial beneficial use to the public, and where all of the lands immediately abutting upon, surrounding, or bordering said waters, together with all riparian rights incident thereto, are owned or held under written lease from the owner, by the person, firm, or corporation making application hereunder."

The only change made was to add the language that any owner or lessee of lands "or private waters" should be entitled to a muskrat-farm license, and then defined the term "private waters." The appellant takes the position that the change or modification indicated a legislative intention or purpose that no license shall be granted for land covered by navigable water.

"Private waters" as used in this subsection are in fact waters navigable in law. It is not essential to the public easement that the capacity for navigation be continuous throughout the year to make it navigable or public. It is sufficient that a stream has periods of navigable capacity ordinarily recurrent from year to year and continuing long enough to make the stream usable as a highway. *Willow River Club v. Wade* (1898), 100 Wis. 86, 76 N. W. 273.

The capacity for floating logs to market during the spring freshets which normally lasts six weeks was held to make a stream navigable. *Falls Mfg. Co. v. Oconto River Imp. Co.* (1894), 87 Wis. 134, 58 N. W. 257.

*Illinois Steel Co. v. Budzisz* (1902), 115 Wis. 68, 90 N. W. 1019, and *Delta Fish and Fur Farms v. Pierce* (1931), 203 Wis. 519, 234 N. W. 881, cited by appellant, pertain to standing water, not running water, and standing water may be held in private ownership.

By ch. 116, Laws of 1947, the legislature repealed and recreated sec. 29.575 (1), Stats., in the precise language in which it was expressed originally, the meaning of which had been construed in *Krenz v. Nichols* (1928), 197 Wis. 394, 222 N. W. 300, wherein it was stated (p. 402):

"The state, under its police power and to carry out its trust, passed the statute in question. So far as it affects the public the statute is reasonable and is not contrary to any provision of the federal or state constitutions. Nor do we think it is contrary to the decision of this court in *Diana Shooting Club v. Husting,* 156 Wis. 261, 145 N. W. 816. In that case the court upheld the right of a citizen of the state to hunt from a boat in the navigable inland streams of the state, notwithstanding that the boat should be on the waters over the lands of a private owner. The court there said that was a right incident to the right of navigation, and that the right of navigation was free to all the citizens of the state upon such waters, by virtue of the Ordinance of 1787, the enabling act of the state constitution, and the constitutional provision thereto.

"While hunting and fishing may be an incident of navigation it does not depend on navigation, nor does navigation depend upon the privilege of hunting and fishing. They are distinct and independent of each other, and are drawn from different sources. Nor can it be reasonably said that hunting and fishing are in any way protected by the Ordinance of 1787 or the constitution of this state incorporating the same therein. The phrase 'forever free' refers to the 'common highways' and protects such highways from 'any tax, duty

or impost therefor.' The court, in *Willow River Club v. Wade,* 100 Wis. 86, 76 N. W. 273, and *Diana Shooting Club v. Husting,* 156 Wis. 261, 145 N. W. 816, was not confronted by any statute of the state regulating the right to take fish or game. It merely passed upon the relative rights of the fisherman and the hunter, on the one side, and the riparian owner of the soil underneath navigable waters, on the other side. Here we have a statute aimed to conserve the property of the state which it holds in trust for the public. It should be given a liberal construction to sustain its validity, and it cannot be set aside unless it clearly violates the organic law of the nation or state. The legislature has declared the title to all wild animals to be in the state of Wisconsin, for the purpose of regulating their use and enjoyment, and it has regulated the whole subject of propagation, hunting, fishing, and disposition of wild animals, in the interest of the public. . . .

"The act in question, sec. 29.575, Stats., is an exercise of the state's power in carrying out its large and comprehensive conservation program of promoting and protecting the public resources and the comfort and happiness of its people."

Appellant contends that in the *Krenz Case* the court failed to give any consideration or effect to sec. 29.575 (10), Stats.; which reads:

"Nothing in this section shall be construed to affect any public right of hunting, trapping, fishing or navigation except as herein expressly provided."

"Except as herein expressly provided" refers to the ownership of muskrats which the purchaser has bought from the state, and paid for (see sec. 29.575 (4), Stats.), and to which the public has no right so long as they are on the licensee's lands.

The language of sec. 29.575 (1), Stats., was construed in *Krenz v. Nichols, supra.* The re-enactment of the statute on which there existed a judicial determination indicates an intent to adopt the judicial determination as a part of the statute. See *Mundt v. Sheboygan & Fond du Lac R. R. Co.* (1872), 31 Wis. 451.

In Wisconsin the owner of the banks of the stream is the owner of the bed, regardless of whether the stream is navigable or nonnavigable. The owner of the submerged soil of a running stream does not own the running water, but he does have certain exclusive rights to make a reasonable use of the water as it passes over or along his land. For instance, he may erect a pier for navigation; he may pump part of the water out of the stream to irrigate his crops; his cattle may be permitted to drink of it; and his muskrats may use it to gather vegetation for the construction of muskrat houses or for food.

It is not within the power of the state to deprive the owner of submerged land of the right to make use of the water which passes over his land, or to grant the use of it to a nonriparian. The riparian's exclusive right to use the water arises directly from the fact that nonriparians have no access to the stream without trespass upon riparian lands.

In the present case the respondent would make use of the water flowing over or past his land in permitting the muskrats to swim in the water, gather feed found in the water or in the bed of the river, build muskrat houses on the bed where the water is shallow, and dig runways in the banks from underneath the surface of the water to their burrows in the banks above the water line.

In general, the rights of the public to the incidents of navigation are boating, bathing, fishing, hunting, and recreation. See *Doemel v. Jantz* (1923), 180 Wis. 225, 193 N. W. 393. Trapping is not included for it is an incident of land use. See *Johnson v. Burghorn* (1920), 212 Mich. 19, 29, 179 N. W. 225. Appellant asserts that float trapping does not require the use of the bottom. However, floats for float trapping are always anchored to the bottom and any method of anchoring or securing a float would, of necessity, require the use of the land or the bottom. The right to use the running water or the bed for float trapping is not included in the easement of navigation. To float-trap in navigable water constitutes a trespass upon the submerged land for which the trespasser

may be prosecuted by the owner of the soil and enjoined from using the public water for that purpose.

The muskrats on a muskrat farm have been bought and paid for by the licensee. They are his personal property whether they are swimming in the waters above his lands or running along on the dry land within the limits of his licensed premises. The presence of the muskrats in a navigable stream covering privately owned lands does not entitle a trespasser to take them any more than a trespasser would be entitled to seize domestic ducks in the same stream. But if a muskrat should leave a licensed area, he becomes *ferae naturae,* and is legitimate prey for a neighboring trapper. See 2 Am. Jur., Animals, p. 699, sec. 12.

Appellant also asserts that the right of navigation includes the incidental use of the bottom. This is true where the use of the bottom is connected with navigation, such as walking as a trout fisherman does in a navigable stream, boating, standing on the bottom while bathing, casting an anchor from a boat in fishing, propelling a duckboat by poling against the bottom, walking on the ice if the river is frozen, etc. These have nothing in common with trapping because the latter involves the exercise of a property right in the land or the bottom.

The Ordinance of 1787 (sec. 1, art. IX, Wisconsin Const.) is not involved in this case. There is no interference with the public's rights of navigation. The navigable waters are not licensed—land alone is licensed, and that land must be privately owned or leased.

The Conservation Department has authority to issue the license applied for.

*By the Court.*—Judgment affirmed.