STATE, Appellant, vs. PUBLIC SERVICE COMMISSION, Respondent.

*January 11—February 5, 1957.*

114

For the appellant there was a brief by the *Attorney General* and *Roy G. Tulane,* assistant attorney general, and oral argument by *Mr. Tulane.*

For the respondent Public Service Commission there was a brief and oral argument by *William E. Torkelson,* chief counsel.

For the city of Madison there was a brief and oral argument by *Harold E. Hanson,* city attorney.

FAIRCHILD, J. The state asserts that the order of the commission should have been reversed because (1) ch. 282, Laws of 1953, is an unconstitutional delegation of legislative power, (2) the findings of fact do not support the order of approval, (3) ch. 282 makes a grant of a lake bed in violation of the trust under which the state owns and controls lake beds, (4) the public purpose to be served by the project is local and the grant is without valuable consideration.

These various challenges must fail for the reasons hereinafter set forth.

Ch. 282, Laws of 1953, is an act for a specific purpose which is fully described. The legislature itself has determined that it is in the public interest to authorize Madison to develop its park by the filling and use of a portion of the bed of Lake Wingra. By the use of the phrase, "subject to the approval of the Public Service Commission," the legislature has required Madison to submit the details of its project to the commission and obtain approval.

The standards for the approval are properly implied from ch. 282, Laws of 1953, itself and from sec. 30.02, Stats., which gives the commission general power to grant permission to place fills or structures on the beds of navigable waters when satisfied that such action will not materially obstruct navigation nor be detrimental to the public interest.

The commission, before approving the project, must be satisfied that it complies with the limitations and purposes expressed in ch. 282, Laws of 1953. It has done so. It has found the project is within the area prescribed by the legislature and will serve the purposes mentioned. Ch. 282 con-

templates that a portion of the lake bed will be filled. Obviously it contemplates that navigation, in a strict sense, will be destroyed to the extent of the fill. In enacting ch. 282 the legislature has determined that some fill and corresponding destruction of navigation is in the public interest. By requiring the approval of the commisson, the legislature required that the details of the project be considered and that it be determined whether the manner in which Madison carried out its authority would materially impair navigation or be detrimental to the public interest. The delegation is greatly limited, and clearly complies with the principles set forth in *State ex rel. Wisconsin Inspection Bureau v. Whitman,* 196 Wis. 472, 220 N. W. 929, and decisions following it.

Approval also is a continuing condition of the authority granted to Madison. Should Madison desire to make any material change in the manner of exercising its authority, it would be required to obtain approval of the change.

The state argues that because the commission found that the fill would, *pro tanto,* destroy navigation, the findings do not support the order of approval. Clearly the legislature contemplated when it enacted ch. 282, Laws of 1953, that there would be some destruction of navigation in the strict sense of the word, and we understand that the findings of the commission approved the project generally as not materially impairing, and in fact improving navigation in certain particulars, while recognizing the obvious, that one could not boat, fish, nor swim in an area where water had been replaced by dry land.

We are of the opinion that the use of filled lake bed, to the extent authorized in ch. 282, Laws of 1953, for park improvement, including a parking area and appurtenant highways, as well as alterations which will aid navigation and other enjoyment of the water, does not violate the obligations of the trust subject to which the state owns the lake bed.

In reaching that conclusion, we attach importance to these facts: 1. Public bodies will control the use of the area. 2. The area will be devoted to public purposes and open to the public. 3. The diminution of lake area will be very small when compared with the whole of Lake Wingra. 4. No one of the public uses of the lake as a lake will be destroyed or greatly impaired. 5. The disappointment of those members of the public who may desire to boat, fish, or swim in the area to be filled is negligible when compared with the greater convenience to be afforded those members of the public who use the city park.

In *Muench v. Public Service Comm.* 261 Wis. 492, 499, 53 N. W. (2d) 514, 55 N. W. (2d) 40, Mr. Justice CURRIE reviewed the history of the doctrine that the state holds the beds underlying navigable waters in trust for all of its citizens. (p. 501.) The trust is "for public purposes." *Illinois Steel Co. v. Bilot,* 109 Wis. 418, 426, 84 N. W. 855, 85 N. W. 402. Early decisions frequently spoke of navigation, often in a commercial sense, as the purpose of the trust, but all public uses of water have from time to time been recognized, including pleasure boating, sailing, fishing, swimming, hunting, skating, and enjoyment of scenic beauty.

Certainly the trust doctrine would prevent the state from making any substantial grant of a lake bed for a purely private purpose. *Priewe v. Wisconsin State Land & Improvement Co.* 93 Wis. 534, 67 N. W. 918. Even for a public purpose, the state could not change an entire lake into dry land nor alter it so as to destroy its character as a lake. *In re Crawford County L. & D. Dist.* 182 Wis. 404, 196 N. W. 874. But the trust doctrine does not prevent minor alterations of the natural boundaries between water and land.

"It is not the law, as we view it, that the state, represented by its legislature, must forever be quiescent in the administration of the trust doctrine, to the extent of leaving the shores of Lake Michigan in all instances in the same condi-

tion and contour as they existed prior to the advent of the white civilization in the territorial area of Wisconsin." *Milwaukee v. State,* 193 Wis. 423, 451, 214 N. W. 820.

The supreme court of the United States has recognized that parcels of lake bed could even be granted by the state to private persons where such parcels "being occupied, do not substantially impair the public interest in the lands and waters remaining." *Illinois Central R. Co. v. Illinois,* 146 U. S. 387, 452, 13 Sup. Ct. 110, 36 L. Ed. 1018. Similarly, *Franzini v. Layland,* 120 Wis. 72, 82, 97 N. W. 499.

Even where an artificial change in the course of a navigable stream will impair the enjoyment of water by hunting and fishing to some extent, the degree of impairment must be weighed against the other public interests to be served and unless the impairment so viewed is substantial, the impairment is not a violation of the trust. *Merwin v. Houghton,* 146 Wis. 398, 410, 131 N. W. 838.

"Undoubtedly, when the *Houghton Case* was decided, this court was thoroughly impressed with the idea that the trust reposed in the state was an active, administrative, and governmental trust, and one which should be administered to promote not only navigation but the public health and welfare generally." *Milwaukee v. State,* 193 Wis. 423, 452, 214 N. W. 820.

As well said by the learned trial court:

"It does not appeal to the reasoning of this court that in exercising its duty, as trustee for the people of the state to the lands underlying its navigable waters, that the state is required to leave the beds of all navigable waters intact and in the condition in which they were created by nature. . . .

"There must be a realistic and sane legal approach to this problem, namely, a balancing of public need and convenience against the interference with navigation involved."

A similar thought is expressed by 1 Farnham, Water and Water Rights, pp. 398, 399, sec. 84:

"The question depends altogether upon the importance of the navigation as compared with the interests which would be promoted by sacrificing it. . . . Therefore, the doctrine is firmly established that when it is for the public interest to interfere with rights of navigation, so far as the public is concerned the legislature may do so. . . . It is primarily for the legislature, and not for the courts, to determine between the conflicting interests and the necessity of requiring the navigation right to yield, and its discretion will not be interfered with by the courts, except in cases of a plain and gross abuse of discretion."

There is no contention here that the purpose authorized by ch. 282, Laws of 1953, is not public. The purpose which is served is not local in any sense which would involve improper use of state property. Any park is local in the sense that it will be of greater use to those living near it than those who are remote, but this has never been considered to prevent the state from providing a park wherever it sees fit. The park is open to all who seek to use it.

Appellant suggests that ch. 282, Laws of 1953, is a grant of property for which consideration must be received. The answer is that ch. 282 is only permission to use property, not a grant of it. It vests nothing in the city which the legislature could not take back at will.

*By the Court.*—Judgment affirmed.

BROWN, J. (*concurring in part; dissenting in part*). The landfill in question has a reasonable relationship toward improved use of the water for purposes of public navigation and recreation and I concur in the result reached by the majority of the court. But in so far as the majority opinion permits use of the lake bed if only some public purpose is served thereby, even though such purpose is opposed to, and even inconsistent with, use of the water by the public, I dis-

agree, preferring to reserve decision of that question until it is presented by the record.

I am authorized to state that Mr. Justice STEINLE and Mr. Justice WINGERT are of the same opinion.