Town of Ashwaubenon, Petitioner and Respondent, v. Public Service Commission, Appellant: Fort Howard Paper Company, Intervenor and Respondent: State, Intervenor and Appellant.*

*November 26—December 20, 1963.*

---

* Motion for rehearing denied, without costs, on March 3, 1964.

41

42

43

For the appellants the cause was argued by *William E. Torkelson,* chief counsel, for the Public Service Commission, and by *Roy G. Tulane,* assistant attorney general, for the state of Wisconsin, with whom on the briefs was *George Thompson,* attorney general.

For the respondent town of Ashwaubenon there was a brief by *Davis, Soquet & Cherney* of Green Bay, and oral argument by *Donald E. Soquet.*

For the respondent Fort Howard Paper Company there was a brief by *Everson, Whitney, O'Melia & Everson* of Green Bay, and oral argument by *John C. Whitney.*

A brief *amici curiae* was filed by *William E. Sieker* of Madison, for the Wisconsin Council for Resource Development and Conservation and Nature Conservancy, Inc.

GORDON, J. This case presents two main issues: (1) Problems concerning the review of an administrative order and (2) the interpretation of sec. 30.11, Stats., and its relation to the trust doctrine pertaining to navigable waters in this state. The appellants contend that the order of the commission is not reviewable by the courts and therefore ask that we reverse the circuit court's denial of their motion to dismiss. The appellants also challenge the circuit court's reversal of an order of the commission denying the town's application for approval of a new bulkhead line on the west side of the Fox river.

### 1. *Judicial Review of Administrative Order.*

There are three principal facets to the appellants' argument that the circuit court should have granted their motion to dismiss.

The appellants contend that judicial review does not lie from the commission's determination because the trust doctrine makes the granting or denying of the right to invade the bed of a navigable water a matter of legislative grace. *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 501, 502, 53 N. W. (2d) 514. We are unable to accept this contention. While we recognize that the Public Service Commission acted in a legislative capacity, we do not believe that it was contemplated under sec. 30.11, Stats. 1959, that arbitrary and unchallengeable power was to be vested in the commission. The statute established two standards by which to weigh the propriety of the proposed bulkhead line, and thus it was not contemplated by the legislature that unbridled power or nonreviewable discretion was to be awarded to the commission.

The two remaining arguments in support of the appellants' motion to dismiss are that judicial review can only be had in a "contested case," under secs. 227.15 and 227.16, Stats., and that the town of Ashwaubenon is not an aggrieved party under sec. 227.16.

We think it is clear that this is not a "contested case." Sec. 227.01 (2), Stats., defines a contested case as one in which there is a "hearing required by law." Although the commission wisely chose to hold a hearing in this matter, it is not required to do so. In *Nick v. State Highway Comm.* (1963), 21 Wis. (2d) 489, 495, 124 N. W. (2d) 574, we noted the following with regard to sec. 227.01 (2):

"In the latter statute, the reference to a 'hearing required by law' presupposes either (1) a hearing expressly provided for by the regulating statute or administrative rule, or (2) a hearing necessitated constitutionally by the requirements of due process."

Even though this was not a "contested case," we are persuaded that the right to review is not foreclosed by such fact. Secs. 227.15 and 227.16, Stats., prior to their amendment in 1945, required such circumstance, but the amendment (ch. 511, Laws of 1945) removed this as a condition to judicial review. This court has in effect sanctioned judicial review notwithstanding the absence of a "contested case." *Nick v. State Highway Comm., supra* (p. 494) ; *Ashwaubenon v. State Highway Comm.* (1962), 17 Wis. (2d) 120, 115 N. W. (2d) 498; *Munninghoff v. Wisconsin Conservation Comm.* (1949), 255 Wis. 252, 38 N. W. (2d) 712.

We recognize that there are decisions of this court which are out of harmony with this determination, and such decisions are deemed modified by the present decision. *Frankenthal v. Wisconsin R. E. Brokers' Board* (1958), 3 Wis. (2d) 249, 88 N. W. (2d) 352, 89 N. W. (2d) 825 ; *Wisconsin Telephone Co. v. Wisconsin E. R. Board* (1948), 253 Wis. 584, 34 N. W. (2d) 844.

The "fair-play" provisions of ch. 227, Stats., will, notwithstanding the instant decision, apply only to contested cases. These sections (227.07–227.13, Stats., inclusive) set forth requirements such as notice and public hearing, all of which arise particularly when there is a contested case, as defined in sec. 227.01 (2). *Hall v. Banking Review Board* (1961), 13 Wis. (2d) 359, 366, 108 N. W. (2d) 543.

The absence of a contested case will normally make judicial review of an administrative ruling more difficult and perhaps more uncertain, since it is only in a contested case that the reviewing court is assured of a full record. However, this is not a sufficient reason to deny the right to review, recognizing that it may be harder for the appellant to establish his contentions upon the appeal, particularly in a legislative-type matter. In *Ashwaubenon v. State Highway Comm.* (1962), 17 Wis. (2d) 120, 126, 115 N. W. (2d) 498, we noted that it was proper for the commission to base its decision upon materials and reports which were received outside of a formal hearing. Thus, the commission's files and interdepartmental correspondence appropriately could have been placed in the record.

The absence of such recognized judicial safeguards as the right to cross-examine and also the ability of the commission to base its opinion upon *ex parte* evidence heavily burdens the position of one who disagrees with the conclusions of an administrative agency after a legislative-type hearing. Even though there is a large hurdle confronting one who seeks to upset the order of a commission in performance of its legislative functions, it is preferable to allow such judicial review rather than to bar it entirely.

We now deal with the appellants' contention that the town is not a "person aggrieved" within sec. 227.16, Stats.

Sec. 30.11, Stats. 1959, reposes in municipalities the right to establish a bulkhead line subject to the approval of the commission. This legislative authorization to the munici-

pality is sufficient, in our opinion, to make it an aggrieved party under sec. 227.16.

In *Greenfield v. Joint County School Comm.* (1955), 271 Wis. 442, 447, 73 N. W. (2d) 580, we defined an aggrieved party as "one having an interest recognized by law in the subject matter which is injuriously affected by the judgment." The municipality by statute is given substantive rights and powers; we believe that such rights and powers are "directly affected" under sec. 227.15, Stats., by an order of the commission which denies consent to the establishment of a proposed bulkhead line.

The town of Ashwaubenon in the instant situation is in a different posture than it was in *Ashwaubenon v. State Highway Comm.* (1962), 17 Wis. (2d) 120, 115 N. W. (2d) 498; in the latter case it enjoyed no higher status in challenging the order of the state highway commission than any other body or person along the route of the highway. In the present case, by legislative action, the town is given the express responsibility for participating in the processes by which the bulkhead line is to be established.

We conclude that the commission's order was reviewable, and the motion to dismiss was properly denied by the circuit court.

### 2. *Sec. 3011, Stats., and Its Relations to the Trust Doctrine.*

We have already noted in this opinion that the trust doctrine pertaining to navigable waters does not insulate the commission's conclusions from judicial review on a theory that intrusions upon navigable waters are an irrefutable matter of grace.

The appellants ardently urge that the trust doctrine reposes in the state of Wisconsin the title to the bed of the Fox river and that any major intrusion by way of structure or fill would violate the trustee's duty to safeguard the navigable waters for the entire citizenry of the state. From *Muench v.*

*Public Service Comm.* (1952), 261 Wis. 492, 53 N. W. (2d) 514, the appellants draw the conclusion that any significant use of the riverbed by private riparians contravenes the sacred trust under which the navigable waters are held.

The respondents do not challenge the paramount title of the state to the riverbed and concede that the legislature may, in the future, revoke the right of the riparian owners to retain structures up to the bulkhead line under sec. 30.11 (4), Stats. 1959. It cannot be denied that the riparian owners have only a qualified title to the bed of the waters. The title of the state is paramount and the rights of others are subject to revocation at the pleasure of the legislature.

Nevertheless, a riparian owner, with knowledge of his qualified title and his revocable rights under sec. 30.11, Stats. 1959, by dint of that very statute may enjoy the use of the riverbed up to the established bulkhead line. The latter line must meet two statutory qualifications. One is that the bulkhead line must be established in the public interest, and the other is that it must "conform as nearly as practicable to the existing shores."

Subject to these express safeguards, the trustee (*i.e.*, the legislature) has authorized the prospect of private structures and fill in beds of the navigable waters. The appellants' argument that the trust doctrine precludes such activities is contradicted by the existence of the statute itself. One does not have to deny either the trust doctrine or the state's paramount title to determine that an intrusion upon the navigable waters is permissible. Sec. 30.11 (4), Stats. 1959, expressly invites such physical interjection.

Previous decisions of this court have authorized limited alterations of the shoreline. In *Milwaukee v. State* (1927), 193 Wis. 423, 451, 214 N. W. 820, this court said:

"It is not the law, as we view it, that the State, represented by its legislature, must forever be quiescent in the administration of the trust doctrine, to the extent of leaving the shores of Lake Michigan in all instances in the same condi-

tion and contour as they existed prior to the advent of the white civilization in the territorial area of Wisconsin."

Similarly, in *State v. Public Service Comm.* (1957), 275 Wis. 112, 81 N. W. (2d) 71, a restricted invasion of public waters was authorized.

Recognizing that the proposed Ashwaubenon bulkhead line constitutes a greater intervention than has previously been approved by earlier decisions of this court in its evaluation of the trust doctrine, we must determine whether the legislature contemplated a thrust to the extent here proposed, and, if so, whether the record supports the findings of the commission that the statutory standards have not been met.

In our opinion, the fair interpretation of sec. 30.11, Stats. 1959, requires the conclusion that the legislature did in fact authorize the type of invasion of navigable waters which is proposed in this case, subject to the safeguards previously referred to. We do not find that the trust doctrine forecloses the legislature from this course. The standards prescribed by the legislature constitute adequate protection to the public and, thus, there is no neglect by the trustee of its responsibilities.

The evidence disclosed by the record necessitates affirmance of the order of the circuit court. The testimony received at the hearing is one-sided in favor of the respondents' position. Eleven witnesses testified on behalf of the town's proposed bulkhead line; no one testified against it.

The only evidence which could possibly support the commission's ruling is the map which was filed with the commission pursuant to sec. 30.11 (3), Stats. 1959. The commission must have deemed that the map on its face showed that the proposed line was not as near as practicable to the existing shore.

We believe that the commission may have entertained the erroneous concept of law that the statutory phrase "as nearly as practicable" is solely a geographical standard. If geogra-

phy were the only determinant, the line obviously could have been closer to the shore. However, we are persuaded that the statutory standard contemplated an evaluation of many factors in determining whether the line conformed "as nearly as practicable to the existing shores." For example, the commission may properly have rendered its judgment after weighing such other elements (in addition to geography) as the existing and potential use of the intermediate area, the existence of engineering complications, the cost of dredging and filling, the prospect of damage to scenic or recreational use of the river, the presence of pollution, and, of course, the influence upon navigation.

The record does not contain facts to support the commission's conclusion that the two statutory standards had not been met. We do not reject the trust doctrine in concluding that the circuit court properly reversed the commission's order and remanded the matter for further proceedings. We recognize the vitality of the trust doctrine, subject to the mandate of the legislature and the implementation of that mandate by the Public Service Commission. As Mr. Justice HOLMES said:

"A river is more than an amenity, it is a treasure. It offers a necessity of life that must be rationed among those who have power over it."

*New Jersey v. New York* (1931), 283 U. S. 336, 342, 51 Sup. Ct. 478, 75 L. Ed. 1104.

The commission upon remand may, if it deems it to be appropriate, take further testimony or supplement the record with additional materials and, in such event, the commission should then exercise its discretion upon such expanded record. If the commission determines that no further evidence should be added to the record, the commission should, in such event, enter an order approving the town's ordinance.

*By the Court.*—Judgment affirmed.

CURRIE, FAIRCHILD, and WILKIE, JJ. (*dissenting*). 1. *Reviewability of the commission's denial of approval.* We agree with the majority of the court that the proceeding in which the commission considered the bulkhead line was not a contested case as defined in sec. 227.01, Stats., but that an administrative decision may be reviewable under secs. 227.15 and 227.16, even though not made in a contested case· as so defined. If a denial of approval of a bulkhead line under sec. 30.11 can be said directly to affect the legal rights, duties, or privileges of any person (here, in particular, the town of Ashwaubenon) then such denial is reviewable in a proceeding such as this.

2. *The town's standing to seek judicial review.* Whether the denial of approval directly affected the legal rights, duties, or privileges of the town of Ashwaubenon, and whether the town was thus a person aggrieved and directly affected under these statutes is a difficult question. In *Ashwaubenon v. State Highway Comm.*[1] the same town challenged an order of the highway commission relocating a state trunk highway. There the interest the town sought to protect was the economic well-being of those who resided, did business, or owned property in the town. We said, at page 128:

"It may even be doubted that the town of Ashwaubenon is an aggrieved party entitled to seek review of the commission's decision. See sec. 227.16, Stats. The town has sought judicial review because its officials ·consider the Highway Commission's decision to be erroneous. What we have before us is the contention of one governmental unit (the town) challenging the wisdom of another governmental unit (the Highway Commission). See *Milwaukee v. Milwaukee County School Comm.* (1959), 8 Wis. (2d) 226, 232, 99 N. W. (2d) 186."

[1] (1962), 17 Wis. (2d) 120, 115 N. W. (2d) 498.

Here the town has a similar interest in riverfront development. It is also seeking to render effective a determination which it has made pursuant to statute as a unit of government. The majority consider that this latter interest is a sufficient basis for deeming the town to be a person aggrieved, under sec. 227.16, Stats., by the commission's denial of approval. We prefer to express no opinion on this facet of the case, in view of our conclusion, different from that of the majority, that on the merits, even assuming the propriety of the review, the town was not entitled to reversal of the commission's decision.

3. *Decision on review.* We respectfully disagree with the conclusion reached, on the merits, by the majority of the court.

Our analysis is as follows:

The state of Wisconsin holds the beds underlying navigable waters in trust for all its citizens.[2] The legislature may, consistent with such trust, authorize limited encroachments upon the beds of such waters, where the public interest will be served. The purposes of the trust include all public uses of water, including commercial navigation, pleasure boating, sailing, fishing, swimming, hunting, skating, and enjoyment of scenic beauty.[3] The advancement of one such public use may be promoted at relatively minor sacrifice of other uses [4] but the weighing of the relative values is always, under the trust doctrine, a decision which affects the interests of the

---

[2] *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 499, 53 N. W. (2d) 514, 55 N. W. (2d) 40.

[3] *State v. Public Service Comm.* (1957), 275 Wis. 112, 118, 81 N. W. (2d) 71.

[4] *Milwaukee v. State* (1927), 193 Wis. 423, 214 N. W. 820; *Illinois Central R. Co. v. Illinois* (1892), 146 U. S. 387, 13 Sup. Ct. 110, 36 L. Ed. 1018; *Franzini v. Layland* (1903), 120 Wis. 72, 97 N. W. 499; *Merwin v Houghton* (1911), 146 Wis. 398, 131 N. W. 838.

people of the entire state.[5] The choice is legislative in character.[6]

In sec. 30.11, Stats., the legislature has authorized encroachments upon navigable waters as a result of the establishment of bulkhead lines, and has provided two standards: (1) The line shall be in the public interest, and (2) it shall conform as nearly as practicable to the existing shores. A municipality is authorized to establish such line, but it is without effect unless the Public Service Commission gives its approval.

The first standard, whether the line is in the public interest, must be considered in the light of the trust doctrine. It leaves wide room for debate in the weighing of the various elements of state public interest in the preservation of waters in their natural state. The second standard, whether the line conforms as nearly as practicable to the existing shores, is more specific, but, again, is a matter of opinion, and its very phrasing suggests that the commission should be conservative in approach to any alteration in natural shorelines.

In our view, the map which the town submitted to the commission showed on its face that a relatively gross invasion of the bed of the river was being proposed. Private filling of from 90 to 1,000 feet out into the stream would be authorized, over a total area of 137 acres. Although the witnesses produced by the town made out a strong case that the proposed line would be adapted to dockage of ocean-going vessels, their evaluations of all the elements of public interest and the practicability of a line close to the existing shores necessarily involved their own opinions on such subjects. Such opinions were not binding on the commission. We think the negative findings made by the commission on these points simply meant that the commission remained un-

[5] *Muench v. Public Service Comm., supra,* p. 515g, footnote 2.
[6] 1 Farnham, Waters and Water Rights, pp. 398, 399, sec. 84.

convinced that so great an invasion of a navigable stream was in the public interest.

Sec. 227.20, Stats., defines the scope of judicial review of administrative decisions and specifies limited grounds upon which the administrative decision may be reversed or modified. Sub. (2) provides, in part:

"Upon such review due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it."

In *Ashwaubenon v. State Highway Comm., supra,* we pointed out, citing *Borden Co. v. McDowell* [7] that (p. 131):

". . . when the 'substantial evidence' rule of sec. 227.20 (1) (d), Stats., is applied to a legislative-type decision, the test is whether reasonable minds could arrive at the same conclusion reached by the commission."

The commission had before it the map showing that the bulkhead line would authorize a very substantial encroachment by private interests upon navigable waters. In our view, applying the substantial evidence test to this quasi-legislative, rather than adjudicative, type of administrative decision, this fact alone supports the commission in remaining unconvinced that the line was in the public interest or as close as practicable to the existing shores. We who join in this opinion are unable to say that the commission's refusal to approve was either arbitrary or capricious.

With respect to the scope of review of an administrative decision which is essentially legislative in character, we note that sec. 227.05 (5), Stats., prescribing the grounds on which a court may find a rule invalid, specifies only that the rule "violates constitutional provisions or exceeds the statutory authority of the agency or was adopted without compliance

[7] (1959), 8 Wis. (2d) 246, 258, 99 N. W. (2d) 146.

with statutory rule-making procedures." Concededly the approval or refusal to approve a bulkhead line is not a rule as defined in sec. 227.01 (3). The character of the administrative act, in both cases, however, is quasi-legislative rather than quasi-judicial.

We would reverse the judgment and affirm the decision of the commission.

The following memorandum was filed March 5, 1964:

PER CURIAM (*on motion for rehearing*). Normally on rehearing this court would not write a memorandum except to clarify or correct the opinion. We are at a loss to understand why both counsel seem to assume that on the remand the commission has been ordered to approve the town's proposed bulkhead line. We thought the opinion was clear in holding a bulkhead line or its predecessor "established shore line" is not to be determined solely by an approximation to the geographical shoreline. In so determining, we did not hold a bulkhead line could be established by a municipality at a location which would be proper for a pierhead line which a municipality under sec. 30.11 (1), Stats., does not have the power to establish.

We stated the record did not contain facts to support the commission's conclusion that the two statutory standards for the establishment of a bulkhead line had not been met. Arguments of counsel are not a substitute for evidence upon appeal. The Public Service Commission must support on the record its denial of an approval. For such purpose, this court remanded, clearly stating, "The commission upon remand may, if it deems it to be appropriate, take further testimony or supplement the record with additional materials and, in such event, the commission should then exercise its discretion upon such expanded record."

Motion for rehearing denied.