Denis COLLINS, Petitioner-Appellant,

v.

Andrew POLICANO, David Ward, and the Regents of the University of Wisconsin, Respondents-Respondents.

Court of Appeals

*No. 99–0255. Submitted on briefs September 10, 1999.—Decided November 11, 1999.*

(Also reported in 605 N.W.2d 260.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Richard B. Jacobson* of *Jacobson & Murray, S.C.*

On behalf of the respondent-respondent, the cause was submitted on the brief of *Jennifer S. Lattis,* assistant attorney general, and *James E. Doyle,* attorney general.

A nonparty brief was filed by *Timothy E. Hawks, Thomas A. Nelson* and *Jeffrey P. Sweetland* of *Shneidman, Myers, Dowling, Blumenfield, Ehlke, Hawks & Domer* of Milwaukee for The Association of University of Wisconsin Professionals, WFT, AFT, AFL-CIO.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. Denis Collins appeals an order which dismissed his petitions seeking relief related to his having been denied tenure at the University of Wisconsin-Madison.[1] Collins sought a writ of mandamus to compel the University to provide him with a formal notice of his right to seek judicial review of the tenure denial. He also sought judicial review of the denial itself under ch. 227, STATS., or by way of a writ of certiorari. The circuit court determined that the University had no legal duty to notify Collins of his

---

[1] Collins's suit names three parties: Andrew Policano, Dean of the University's School of Business; David Ward, Chancellor of the University of Wisconsin-Madison; and the Board of Regents of the University of Wisconsin System. We will refer to the respondents collectively as "the University," except where it is necessary to separately identify them.

right to seek judicial review, and that Collins's petitions for statutory and certiorari review were untimely. We conclude that the circuit court did not err in dismissing the three petitions, and we thus affirm the appealed order.

## BACKGROUND

¶ 2. The circuit court granted the University's motion to dismiss, which tests the legal sufficiency of Collins's petitions. We, like the trial court, must accept as true the facts alleged in the petitions, as well as reasonable inferences drawn from those facts. *See Town of Eagle v. Christensen*, 191 Wis. 2d 301, 311–12, 529 N.W.2d 245, 249 (Ct. App. 1995). Accordingly, we summarize the allegations of Collins's petitions.[2]

¶ 3. Collins was appointed to the faculty of the University of Wisconsin-Madison's business school in 1990. He served two, three-year terms as an assistant professor. In 1996, the departmental executive committee recommended that Collins be granted tenure. The dean of the business school, however, decided not to forward the committee's recommendation to the chancellor and the regents. In so doing, the dean effectively denied Collins tenure. Pursuant to the University's procedures, Collins requested reconsideration of the tenure denial. In August 1997, the dean sent Collins a letter affirming the denial. Collins appealed this decision to the Committee on Faculty

[2] The University asserts that the petitions are "quite misleading as [they] leave[ ] out many steps in the applicable tenure denial process." Nonetheless, the University acknowledges that the alleged omissions are "immaterial" to its motion to dismiss.

Rights and Responsibilities (CFRR), "which decided not to accept the appeal" later that same month.[3]

¶ 4. In August 1998, Collins filed three petitions in the circuit court relating to the tenure denial. In the first, seeking mandamus, Collins alleged that the University was required, under § 227.48(2), STATS., to notify him of his right to seek review of the tenure denial.[4] The circuit court concluded, however, that the decision to deny Collins tenure did not trigger the formal notice requirement under § 227.48(2). In his second petition, Collins alleged that the dean and chan-

---

[3] Dean Policano, in an affidavit contained in the record, describes the tenure decision-making process as follows: The University's Committee on Faculty Rights and Responsibilities (CFRR) considered Collins's tenure denial in an earlier appeal, and it revised the business school executive committee's original recommendation to a "yes" vote. The Social Studies Divisional Committee, the next step in the process, then voted against tenure, which prompted Policano to not recommend Collins for tenure. The business school executive committee then voted to not submit the matter to the divisional committee for its reconsideration. Collins took another appeal to the CFRR, which "found no errors in procedure or process."

Collins does not allege in his petitions that any action or omission by the CFRR violated his procedural rights.

[4] All statutory references in this opinion are to Wisconsin Statutes, 1997–98, unless otherwise indicated. Section 227.48(2), STATS., provides as follows:

Each decision shall include notice of any right of the parties to petition for rehearing and administrative or judicial review of adverse decisions, the time allowed for filing each petition and identification of the party to be named as respondent. No time period specified under s. 227.49(1) for filing a petition for rehearing, under s. 227.53(1)(a) for filing a petition for judicial review or under any other section permitting administrative review of an agency decision begins to run until the agency has complied with this subsection.

cellor acted arbitrarily and capriciously in denying him tenure, and that he was entitled to a common-law writ of certiorari to review their actions. Finally, Collins alleged that he was statutorily entitled to judicial review of the University's decision to deny him tenure under ch. 227, STATS. The court dismissed the petitions for statutory and certiorari review as untimely because Collins did not file them within six months of the tenure denial. Collins appeals the order dismissing his petitions.

## ANALYSIS

*I. Writ of Mandamus.*

¶ 5. A court may issue a writ of mandamus to compel a public officer to perform a prescribed, statutory duty. *See Morrissette v. DeZonia*, 63 Wis. 2d 429, 432, 217 N.W.2d 377, 379 (1974). A writ of mandamus is an "extraordinary legal remedy" and will be issued only if the petitioner can establish that there is a "clear, specific legal right which is free from substantial doubt." *See Vretenar v. Hebron*, 144 Wis. 2d 655, 662, 424 N.W.2d 714, 716–17 (1988). Collins contends that § 227.48(2), STATS., imposes a clear duty on the University to provide him with formal notice of his right to seek judicial review of the tenure denial. The University responds that the cited section applies only to "contested cases," and it is thus inapplicable to tenure decisions, which are not contested cases under ch. 227. Thus, the question before us is largely one of statutory interpretation, which we decide de novo. *See Truttschel v. Martin*, 208 Wis. 2d 361, 364–65, 560 N.W.2d 315, 317 (Ct. App. 1997).

¶ 6. Generally, a state agency's "[a]dministrative decisions which adversely affect the substantial interests of any person" are subject to judicial review under ch. 227, STATS. *See* § 227.52, STATS. To obtain judicial review of an agency decision, an aggrieved individual must serve a petition for review upon the agency and file it with the circuit court. *See* § 227.53, STATS. Two broad types of administrative decisions are reviewable under ch. 227, those arising out of "contested cases," and those which do not. *See Ashwaubenon v. Public Serv. Comm'n,* 22 Wis. 2d 38, 46, 125 N.W.2d 647, 652 (1963).

¶ 7. A "contested case" is "an agency proceeding in which the assertion by one party of any substantial interest is denied or controverted by another party and in which, after a hearing required by law, a substantial interest of a party is determined or adversely affected by a decision or order." Section 227.01(3), STATS. A contested case proceeding thus generally involves two or more clearly identified adverse parties, as well as some type of fact-finding by an agency decision maker. Examples include rate making, the granting or denying of licenses, and an agency's imposition of sanctions on a regulated entity. *See* § 227.01(3)(a) and (b).

¶ 8. Chapter 227, STATS., sets forth numerous procedural requirements applicable to contested cases. Among them are §§ 227.44–.47, STATS., which are sometimes referred to as the administrative "fair-play provisions." *See, e.g., Ashwaubenon,* 22 Wis. 2d at 47, 125 N.W.2d at 652 (referring to §§ 227.07–.13, STATS., 1945–46, which, restructured and renumbered, are now found within §§ 227.44–.47). The "fair-play" provisions apply only to decisions reviewable under ch. 227, STATS., that arise from contested case proceedings. *See Ashwaubenon,* 22 Wis. 2d at 47, 125 N.W.2d at 652.

The contested case "fair-play" provisions guarantee such things as the right to a hearing, the admission of evidence, the right to cross-examination, and the issuance of written decisions. *See* §§ 227.44–.47.

¶ 9. We have previously held that the denial of tenure by the University does not entitle the disappointed faculty member to a contested case proceeding under ch. 227, STATS. *See Coe v. Board of Regents*, 140 Wis. 2d 261, 271–74, 409 N.W.2d 166, 169–71 (Ct. App. 1987). Thus, the "fair-play" provisions do not apply to tenure decisions. The University argues that the notice requirement contained in § 227.48(2), STATS., like the fair-play provisions which precede it, applies only to "contested cases," which a tenure denial is not. Collins's contention is that the University's denial of tenure, even if not a contested case under ch. 227, is nonetheless an administrative decision to which § 227.48(2) applies. We must decide, therefore, whether the notice requirement under § 227.48(2) applies to only contested cases under ch. 227, or whether its application is broader, such that the University was obligated to provide Collins formal notice of his appeal rights regarding the tenure denial.

¶ 10. The interpretation of a statute and its application to undisputed facts present a question of law, and although our review is de novo, we are aided in this case by the trial court's thoughtful analysis. *See Katzman v. State Ethics Bd.*, 228 Wis. 2d 282, 290–91, 596 N.W.2d 861, 864–65 (Ct. App. 1999). The chief objective of our review is to ascertain the intent of the legislature. *See Truttschel*, 208 Wis. 2d at 365, 560 N.W.2d at 317. We first look to the plain language of the statute to discern the legislature's intent. *See Anderson v. City of Milwaukee*, 208 Wis. 2d 18, 25, 559

428

N.W.2d 563, 566 (1997). If the plain language of the statute clearly sets forth the legislative intent, we apply the statute accordingly to the facts and circumstances before us. *See Jungbluth v. Hometown, Inc.,* 201 Wis. 2d 320, 327, 548 N.W.2d 519, 522 (1996). If the statute's language is ambiguous, however, we will consult its legislative history, scope, context and purpose in order to apply the statute consistent with the legislature's intent. *See id.*

¶ 11. The language of § 227.48(2), STATS., does not explicitly restrict the notice requirement to decisions made in "contested cases." It says only that "[e]ach decision . . . shall include notice of any right of the parties to petition for rehearing and administrative or judicial review. . . ." Section 227.48(2). Thus, the language of § 227.48(2) does not make explicit the type of decisions which trigger its formal notice requirements. There are at least three possibilities: only decisions in contested cases; all administrative decisions reviewable under ch. 227; or some set of decisions larger than the first class but smaller than the second. We conclude that the statute is ambiguous as to the question before us, and we thus look beyond the statutory language in an attempt to discern the legislature's intent in enacting § 227.48(2).[5]

_____

[5] This statutory section has undergone extensive renumbering. As enacted, the section of ch. 227, STATS., entitled "Service of Decisions" was numbered § 227.14, STATS. *See* Laws of 1943, ch. 375, § 1. In 1975, this section was renumbered § 227.11, STATS. *See* Laws of 1975, ch. 414, § 17. In 1981, the notice provision at issue in this case was added to § 227.11 as subsection (2). *See* Laws of 1981, ch. 378, § 2. In 1985, § 227.11 was renumbered § 227.48, STATS. *See* 1985 Wis. Act 182, § 33rm.

¶ 12. We first consider the statute's legislative history. In an amicus curiae brief filed in support of Collins's appeal, The Association of University of Wisconsin Professionals argues that the legislative history of § 227.48(2), STATS., establishes that the statute applies to all petitions for judicial review filed under § 227.53, STATS. We are not convinced, however, that the legislative history of § 227.48(2) supports the interpretation amicus advances.

¶ 13. The legislature created the notice provision in § 227.48(2), STATS., in 1982 in response to this court's holding in *Sunnyview Village, Inc. v. Department of Admin.*, 100 Wis. 2d 34, 300 N.W.2d 878 (Ct. App. 1980) (*Sunnyview I*), rev'd, 104 Wis. 2d 396, 311 N.W.2d 632 (1981) (*Sunnyview II*). The Legislative Reference Bureau's analysis of 1981 Assembly Bill 983 (which became Laws of 1981, ch. 378) explains that

> [t]his bill addresses a problem brought to light in a recent Wisconsin case, [*Sunnyview I*], in which the court of appeals upheld the circuit court's dismissal of a petition for judicial review of a decision of the division of nursing home forfeiture appeals on the grounds that the petitioner nursing home had failed to name the proper agency as respondent within the statutory time limit.

¶ 14. In affirming the dismissal of the petition for review, we noted in *Sunnyview I* that the then-existing provisions of ch. 227, STATS., placed a great burden on petitioners by forcing them to "find[ ] their way through the governmental maze to locate the proper agency, division or bureau." *See Sunnyview I*, 100 Wis. 2d at 39, 300 N.W.2d at 881. The drafting files for 1981 Assembly Bill 983 indicate that the legislature wanted to ensure that potential petitioners receive, in a timely

430

manner, all information necessary to file a valid petition for judicial review. There is no indication whether the notice requirement was intended to be applied only to contested cases, or to "other" decisions reviewable under ch. 227, STATS., as well. *See* LRB Analysis, 1981 Assembly Bill 983 (LRB–3125/1).

¶ 15. We believe it is significant, however, that the decision for which judicial review was sought in *Sunnyview* arose from a contested case. There, a nursing home had contested a forfeiture imposed by the Department of Health and Social Services for a violation of nursing home regulations. Section 50.04(5)(e), STATS., 1979–80, provided for an appeal to the "Division of Nursing Home Forfeiture Appeals," and the statute referred to a "hearing under s. 227.07," and to the designation of a hearing examiner under "s. 227.09." *See Sunnyview II*, 104 Wis. 2d at 403, 311 N.W.2d at 636. These two sections of the 1979–80 statutes were among the "fair-play" provisions, and they expressly applied to only contested case proceedings. We conclude that, because the problem the legislature sought to address arose out of a contested case proceeding, it is likely that its intent was to include the notice of appeal rights as part of the formal decision making and service procedures applicable in contested cases.

¶ 16. We next consider the context within which § 227.48(2), STATS., exists, as well as the apparent scope and purpose of the subsection, to the extent that they may be discerned from the language of the statute and related sections. Collins argues that the subsection's placement within ch. 227 separates it from the provisions in the chapter which apply only in contested cases, thus indicating that the notice requirement has a broader scope. The University responds that the use of the term "party" in § 227.48(2), and its definition in

ch. 227, show just the opposite. We agree with the University's analysis.

¶ 17. Section 227.14, STATS., 1945–46, the predecessor of § 227.48, STATS., was not explicitly identified by the supreme court as one of ch. 227's "fair-play" provisions. *See Hall v. Banking Review Bd.*, 13 Wis. 2d 359, 366, 108 N.W.2d 543, 546 (1961); *see also Ashwaubenon*, 22 Wis. 2d at 47, 125 N.W.2d at 652. The court listed only §§ 227.07–.13, STATS., 1945–46, as the chapter's "fair-play" provisions. Section 227.14, which immediately followed, provided that "[e]very decision when made, signed and filed, shall be served forthwith by personal delivery or mailing of a copy to each party to the proceedings or to his attorney of record." Collins argues that the placement of § 227.14 creates an intentional distinction between it and the "fair-play" provisions which preceded that section. According to Collins, the placement shows the legislature intended that § 227.14 and the sections after it should have broader application than the fair-play provisions in §§ 227.07–.13, which were applicable only in "contested cases."

¶ 18. Collins's argument, however, fails to account for the subsequent renumbering and rearrangement of these statutory sections. We are not convinced that the 1945 legislature intended to confine procedures applicable only in contested cases to the sections before § 227.14, STATS., 1945–46, and further intended that all procedures specified in § 227.14 and beyond were to have broader applicability. But even if it did, the present placement of § 227.48(2), STATS., contradicts such an intent. Section 227.48(2) is both preceded and followed by sections which apply only to contested cases. *See* §§ 227.44–.46, and .485–.50, STATS. Applying Collins's argument to the current

structure of ch. 227, the placement of § 227.48(2) within and among these contested case provisions indicates the legislature has intended, since at least 1985, to limit the applicability of § 227.48(2) to contested cases.[6]

---

[6] Amicus curiae makes a similar placement-based argument, noting that the 1945 Act changed the terminology of the service requirement in § 227.14, STATS., 1945–46. Formerly, § 227.14 referred to "the decision," which amicus acknowledges was a direct reference to "every decision in a contested case," as specified in § 227.13, STATS. The Act modified the language of § 227.14 to read "every decision," which amicus claims shows an intent that the section have broader applicability than just contested cases. This argument is, at best, strained.

As amended in 1945, § 227.13, STATS., 1945–46, begins "[e]very decision of an agency in a contested case shall be in writing. . . ." and § 227.14, STATS., 1945–46, begins, "[e]very decision when made, signed and filed, shall be served forthwith. . . ." We conclude that the parallel opening words, "every decision," imply a common reference to the same decisions, i.e., decisions in contested cases. If the legislature's intent was truly to have § 227.14 apply to decisions beyond those in contested cases, this word choice was a strange way to communicate that intent. It would have been quite easy to signal a shift in applicability between §§ 227.13 and .14 by saying, for example, "every decision in a contested case, and all other agency decisions, shall be served forthwith. . . ."

When the legislature in 1982 added subsection (2), the notice of appeal rights provision, it chose to begin the subsection with "[e]ach decision shall include notice of any right of the parties. . . ." The reference to "each" decision in subsection (2) is clearly to "every decision" that must be served under subsection (1). We conclude that "every decision" in subsection (1) refers to every decision arising from contested case proceedings, which is the subject addressed by the statutes which immediately precede and follow § 227.48, STATS.

433

¶ 19. We next consider whether the definitional provisions of ch. 227, STATS., also serve to limit the application of § 227.48(2), to only contested cases, as the University maintains. The statute provides that "[e]ach decision shall include notice of any right of the *parties* to petition for rehearing and administrative or judicial review of adverse decisions, the time allowed for filing each petition and identification of the *party* to be named as respondent" (emphasis added). Section 227.01(8), STATS., specifies that "in this chapter [227]," the term " '[p]arty' means a person or agency named or admitted as a *party in a contested case*" (emphasis added). We thus agree with the University that the relevant statutory definition supports the conclusion that the legislature intended § 227.48(2), STATS., to apply only in contested cases.

¶ 20. Collins and amicus curiae, however, assert that the use of the word "party" in § 227.48(2), STATS., is not as significant as the University suggests. They point out that the word "party" also appears in other provisions in ch. 227 which have been held to apply to the review of agency decisions arising from other than contested case proceedings. *See, e.g.*, § 227.53(1)(a)3, STATS. This may be so, but we conclude that the legislature's use of the word "party" in § 227.48(2), STATS., was both intentional and significant. The words "person" or "petitioner" are generally used in ch. 227 when the reference includes an individual involved in other than a contested case. *See, e.g.*, §§ 227.52–.53, STATS. As the University points out, when the term "party" is used in later sections to refer to parties in judicial review proceedings, as opposed to administrative proceedings, the change in reference is obvious from context. *See, e.g.*, § 227.55, STATS. In short, Collins and amicus curiae have failed to persuade us that the use of the

word "party" in § 227.48(2), STATS., refers to any persons other than those defined in § 227.01(8), STATS., that is, parties to contested cases under ch. 227.

¶ 21. Thus, after considering the statute's history, context, scope and purpose, we conclude that formal notice of the right to judicial review under § 227.48(2), STATS., need be given only in or with administrative decisions arising out of contested case proceedings. The University's denial of tenure to Collins did not derive from a contested case proceeding. The University was therefore under no legal duty to provide the § 227.48(2) notice to Collins, and the circuit court did not err in dismissing his petition for a writ of mandamus.

### II. Judicial Review Under Chapter 227.

¶ 22. "Administrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review as provided in this chapter. . . ." Section 227.52, STATS. Reviewable decisions include those arising from contested cases, as well as any other administrative decisions which meet the statutory criteria. *See Ashwaubenon*, 22 Wis. 2d at 46, 125 N.W.2d at 651–52. A petitioner for judicial review must comply with procedural requirements set forth in § 227.53, STATS., which include the filing and service of a petition for review within thirty days "after the service of the decision of the agency upon all parties under s. 227.48." *See* § 227.53(1)(a)2, STATS. The parties dispute whether this thirty-day limitation applies only to the review of decisions in contested cases, or if it also applies to "other" decisions reviewable under ch. 227.

¶ 23. The University argues that the thirty-day limitation applies to *all* judicial reviews under ch. 227, STATS., because the legislature has not provided any other limitation period, and it would be unreasonable to conclude that the legislature intended that judicial review of "other" (noncontested case) agency decisions could be obtained indefinitely.[7] The University cites several cases which, while not directly deciding the issue, imply that the thirty-day limitation period applies to the judicial review of noncontested case decisions. *See, e.g., Trojan v. Board of Regents*, 104 Wis. 2d 277, 311 N.W.2d 586 (1981).

¶ 24. Conversely, Collins maintains that absent service of a notice under § 227.48(2), STATS., no limitation period whatsoever has begun to run on his right to seek judicial review of the tenure denial. We have concluded, however, that § 227.48(2) is not applicable to the tenure denial decision. Thus, any limitation period for review of the decision must, of necessity, be triggered by some event other than the service of the notice under § 227.48(2). Collins argues that, if a limitation period did commence without service of the notice, the period did not begin until the University "made clear its refusal to give notice in March 1998." We disagree.

¶ 25. In the section of his pleading entitled "Petition for Administrative Review," Collins alleges that the "acts and omissions" of the University for which he seeks review "consist[ed] of the adverse determination

---

[7] The University also argues that the substance of tenure decisions is not entitled to judicial review under ch. 227, STATS., regardless of when a petition is filed. We do not address this argument because we conclude that Collins forfeited whatever rights he may have had to judicial review of either the substance or the procedure of the tenure denial by failing to timely file and serve his petition for review.

regarding Collins'[s] promotion and tenure." We agree with the University that "the adverse determination regarding Collins'[s] promotion and tenure" occurred either when the dean "affirmed his decision to deny Collins'[s] promotion and tenure by letter dated 4 August 1997," or, at the latest, when the CFRR "decided not to accept [Collins's] appeal" from the dean's decision, which allegedly occurred later that same month. Thus, if the thirty-day limitation period for commencing judicial review proceedings under § 227.53, STATS., applies, Collins's opportunity to seek review of the tenure denial expired on or about September 30, 1997.

¶ 26. But even if the thirty-day limitation is inapplicable, Collins's filing in August 1998 came too late. When a statute creating a right to judicial review by certiorari sets no time limit for commencing court action, six months is "the ultimate period beyond which an appeal by certiorari cannot be taken. . . ." *See State ex rel. Casper v. Board of Trustees*, 30 Wis. 2d 170, 174, 140 N.W.2d 301, 303 (1966). We can think of no reason why the six-month "default" limitation for review of administrative decisions by certiorari should not also be "the ultimate period" within which a petition for review under ch. 227, STATS., must be filed. Collins did not file his petition for review until August 3, 1998, almost one year after the University's final adverse action on his tenure had occurred. We thus agree with the trial court's conclusion that whether the limitation is thirty days or six months, Collins filed his petition too late to obtain review of the tenure denial under ch. 227.[8]

---

[8] We do not decide, because it is unnecessary on the present facts for us to do so, whether judicial review of an administra-

*III. Writ of Certiorari.*

¶ 27. Collins also petitioned for a common-law writ of certiorari. A court, in its discretion, may grant certiorari review of an administrative decision even when no statutory basis for judicial review exists. *See State ex rel. Damerow v. Behrens*, 11 Wis. 2d 426, 429, 105 N.W.2d 866, 868 (1960). A certiorari petition is barred by laches, however, if not filed within six months of the action sought to be reviewed. *See State ex rel. Enk v. Mentkowski*, 76 Wis. 2d 565, 575–76, 252 N.W.2d 28, 32 (1977). As we have discussed, the latest possible date on which the denial of Collins's tenure can be said to have occurred was in late August 1997, when the CFRR "decided not to accept" Collins's appeal.

¶ 28. Collins contends, however, that he delayed filing a certiorari petition because he was awaiting written notice of his right to appeal the University's decision, to which he claimed to be entitled under § 227.48(2), STATS. According to Collins, the University's letter of March 19, 1998, informing him that it would not be issuing the statutory notice to him, constituted the final decision or "action sought to be reviewed." We have rejected this argument with respect to the timeliness of a petition for review under ch. 227. The argument has even less merit with respect to the timeliness of a petition for certiorari review. Collins may not unilaterally toll the running of the common-law limitation period by making requests for a notice related to statutory review proceedings.

---

tive decision to which § 227.48(2), STATS., does not apply must be commenced within thirty days of the decision.

¶ 29. The trial court correctly concluded that Collins was guilty of laches because he did not commence certiorari proceedings within six months of the tenure denial decision. We conclude, therefore, that the circuit court did not err in dismissing the petition for certiorari review of the tenure denial.

## CONCLUSION

¶ 30. For the reasons discussed above, we affirm the order dismissing Collins's petitions.

*By the Court.*—Order affirmed.