CITY OF FOND DU LAC, Respondent, vs. TOWN OF EMPIRE and others, Appellants.*

*June 4—June 22, 1956.*

* Motion for rehearing denied, with $25 costs, on September 11, 1956.

334

**336**

For the appellants there was a brief by *St. Peter & Hauer* of Fond du Lac, and oral argument by *George M. St. Peter* and *Albert J. Hauer.*

For the respondent there was a brief by *Frederick K. Foster,* corporation counsel, and *Worthing & Calhoun,* special counsel, and oral argument by *Mr. Kenneth E. Worthing* and *Mr. Foster.*

A brief was filed by *Willink & Thompson* of Madison, for the Wisconsin Farm Bureau Federation, Co-operative, as *amicus curiae.*

A brief was filed by *Roy W. Thiel* of Fond du Lac, for the town of Taycheedah, as *amicus curiae.*

BROADFOOT, J. The defendants vigorously contend that they had ample authority to enact the three ordinances. It is conceded that the town board has been granted the powers of a village board.

The powers of villages are derived solely from the state through the legislature, except where the people of the state by a constitutional home-rule provision vest the village with some degree of local sovereignty. The legislature of Wisconsin has never been hostile to granting a large measure of

local self-government to villages and cities. Some attempts to do so by the legislature have been held to be unlawful delegations of legislative authority. Accordingly, in 1924 a home-rule amendment to the constitution (sec. 3, art. XI) was enacted, which reads as follows:

"Cities and villages organized pursuant to state law are hereby empowered, to determine their local affairs and government, subject only to this constitution and *to such enactments of the legislature of state-wide concern* as shall with uniformity affect every city or every village. The method of such determination shall be prescribed by the legislature." (Emphasis supplied.)

Thereafter enabling legislation was enacted by the legislature. Now, under the provisions of sec. 61.34, Stats., villages have been vested with very broad, if not full, police powers in local affairs. In *Van Gilder v. Madison,* 222 Wis. 58, 267 N. W. 25, 268 N. W. 108, this subject was thoroughly reviewed. In that case the court said (p. 83):

"The power granted cities and villages by the home-rule amendment is the power to determine their local affairs and government. The amendment confers upon cities and villages no power to deal by way of charter ordinance with matters which are primarily of state-wide concern."

The home-rule amendment was a direct grant of power to cities and villages but it did not give to the legislature any additional power to delegate legislative authority to cities or villages in matters primarily of state-wide concern. Thus, the case of *Muench v. Public Service Comm.* 261 Wis. 492, 53 N. W. (2d) 514, 55 N. W. (2d) 40, is in point. Although in that case we were concerned with the power of the legislature to delegate legislative authority to county boards, the principle is the same.

In the *Van Gilder Case, supra,* it was pointed out that no attempt had been made to define what are local affairs and

what are matters of state-wide concern, nor does the home-rule amendment lodge the power in the legislature to define said terms. However, matters of public policy are primarily for the legislature and a determination by it that a certain matter is of state-wide concern is entitled to great weight. By enacting sec. 144.03, Stats., the legislature has indicated that the use of subterranean waters of the state is a matter of state-wide concern, although it has done very little to regulate the use thereof. This state has always been blessed with a large supply of water, both surface and subterranean. Until recently its water supply has been abundant. However, in recent years, because of the growth of population and a concentration thereof and because of the increased use of water from subterranean sources on farms, by industries, and in homes, our supplies thereof have begun to cause concern. The legislature has further shown its interest in the matter by appropriating money for a study of the subject by a ground-water working group of the natural resources committee of state agencies. Other studies are being made by the United States geological survey and the University of Wisconsin. Presumably, when the legislature receives what it considers to be sufficient information it will enact laws that will permit some state agency to regulate the use of subterranean and other waters. We have no hesitancy in saying that the water supply of the state is a matter of state-wide concern.

In a companion case, *Menne v. Fond du Lac,* post, p. 341, 77 N. W. (2d) 703, the complaint alleges that the water basin which the city intends to tap extends not only under the town of Empire, but also under the towns of Taycheedah and Forest. We can readily concede that the tapping of this water basin by the city is a matter of local concern to the towns that will be affected thereby, and to the residents thereof. However, as was stated in the *Muench Case, supra,* where a matter affects the interests of local residents as well

as the interests of the people in other areas of the state, the test to be applied in resolving the matter is that of paramount interest, and we deem that the interest of the people generally is paramount to that of the residents of the town of Empire. Therefore, we can find no authority, either under the home-rule amendment or under ch. 61, Stats., that would authorize the town of Empire to adopt the ordinances under attack. They are therefore declared to be invalid.

Further, in the case of *Voss v. Lenerz,* 256 Wis. 183, 40 N. W. (2d) 519, it was held that village ordinances under the police power must be consistent and not in conflict with the law of the state. As of the date of the commencement of the action, the law of the state with reference to subterranean, percolating waters is controlled by the case of *Huber v. Merkel,* 117 Wis. 355, 94 N. W. 354. In that case the court was considering the validity of ch. 354, Laws of 1901, which read as follows:

"Where there are two or more artesian wells in any vicinity or neighborhood, one or more of which are operated or used by any person or owner, the person or owner of such well shall use due care and diligence to prevent any loss or waste or unreasonable use of any water therein contained or flowing from the same, as would deprive or unnecessarily diminish the flow of water in any artesian well, to the injury of the owner of any other well in the same vicinity or neighborhood.

"Any person who shall needlessly allow or permit any artesian well owned or operated by him, to discharge greater quantities of water than is reasonably necessary for the use of such person so as to materially diminish the flow of water in any other artesian well in the same vicinity, shall be liable for all damages which the owner of any such other well shall sustain."

The action was brought to restrain the defendant from wasting or unreasonably using the water from two artesian wells upon defendant's land, on the ground that such use interfered with the flow of water from plaintiff's artesian

well situated on his land. In the town of Germantown, Washington county, there was an area about two and one-half miles in width by five miles in length within which there were about 30 artesian wells. The plaintiff's farm was located on higher ground than that of the defendant. Apparently all of the well owners except the defendant had caps or plugs on their wells to check the flow of water when the well was not in use. The defendant refused to cap his wells and as a result thereof the water in plaintiff's well would not rise above the surface but could only be raised by means of a pump. / The trial court found that the defendant maliciously allowed his wells to flow to their full capacity; that he used some of the water from his wells to supply a fishpond on his land; that he sold some, and intentionally and maliciously wasted the remainder by allowing it to flow and soak into the ground. The trial court granted the injunction and awarded the plaintiff nominal damages. Upon appeal to this court the judgment of the trial court was reversed. The court held that an owner of land had a right to sink wells thereon and to use the water from them, if the supply was percolating water, in any way he chose, or to allow it to flow away, even though he would be diminishing the water in his neighbors' wells, and even though in so doing he was actuated by malicious motives. The court further held that such right of a landowner is a property right which cannot be taken away or impaired by legislation unless by the exercise of the right of eminent domain or by proper exercise of the police power. The court held that the legislation in question was in no sense a condemnation law nor could it be sustained as a proper exercise of the police power, because it did not pretend to serve any public interest but was for the purpose of promoting the welfare of one citizen by preventing his neighbor from using his own property. So much of the decision in the *Huber Case* as is applicable to the facts before us is controlling, and is the general law of the state.

In addition to sec. 144.03, Stats., our attention has been called to only one other section dealing with the subject of water supply, sec. 66.066 (1a), which authorizes municipalities to acquire, own, and operate a source of water supply and necessary transmission facilities beyond its corporate limits. The ordinances of the town of Empire conflict with these general laws of the state, and that is a second reason for holding that they are invalid.

*By the Court.*—Order affirmed.

* Motion for rehearing denied, with $25 costs, on September 11, 1956.