MENZER, Plaintiff and Appellant, v. VILLAGE OF ELK-
HART LAKE and another, Defendants and Respon-
dents: STATE, Intervening Defendant and Respon-
dent.*

*No. 95. Argued March 30, 1971.—Decided May 4, 1971.*
(Also reported in 186 N. W. 2d 290.)

For the plaintiff-appellant there were briefs by *Brady, Tyrrell, Cotter & Cutler,* attorneys, and *Richard W. Cutler, Samuel J. Recht,* and *Michael J. Spector* of counsel, all of Milwaukee, and oral argument by *Mr. Recht.*

For the defendants-respondents there was a brief by *Holden, Halvorsen & Bjork,* attorneys, and *Peter A. Bjork* of counsel, all of Sheboygan, and oral argument by *Peter A. Bjork.*

For the intervening defendant-respondent the cause was argued by *Robert B. McConnell,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J. This lawsuit involves two identical ordinances, one state statute and all lakes in Wisconsin.

*The lakes.* The lake here involved is Elkhart Lake, a 300-acre body of water in Sheboygan county, lying entirely within the limits of the town of Rhine and village of Elkhart Lake. However, the legal issues raised relate to all lakes, ranging in size from the millpond in Neosho to Lake Winnebago. Actually, discussion of issues raised begins with asking, What in law is a lake? Appellant stresses a lake being a navigable body of water, seeing a prohibition of powerboating as the equivalent of banning horseless carriages from a highway to prevent interference with its use by horse-drawn vehicles. Respondents stress the lake as a recreational area and place for "enjoyment of natural scenic beauty." With this emphasis,

the ordinance becomes an effort to deal with "the competion of conflicting uses for a body of water." Like the blindmen of Ind in the fable, each of whom described an elephant in terms of the portion of the animal he had encountered, neither is wrong, but neither gives the full picture. Actually a lake is many things to many people. The totality of its preciousness as a public asset or state resource is not caught in the uses to which it is put— swimming, fishing, boating (canoeing, rowboating, sailboating, powerboating), skin diving, resting, relaxing, just looking and enjoying the view. While all users may concur in not wanting a lake to become an open sewer, the public concern and interest in preventing pollution goes beyond the accommodation of users, actual or potential. It extends to what is reasonable in the preservation or restoration of a lake as a valuable natural resource of a state and its people.

*The statute.* The statute, sec. 30.77, provides, in pertinent part, that no municipality may: ". . . Except as provided in subs. (2) and (3), enact any local regulation which in any manner excludes any boat from the free use of the waters of this state or which pertains to the use, operation or equipment of boats . . . ." The two subsections, noted as exceptions to the ban on local regulations as to boating, read as follows:

"(2) ORDINANCES CONFORMING TO STATE LAW. Any municipality may enact ordinances which are in strict conformity with ss. 30.50 to 30.71 or rules of the department enacted pursuant thereto.

"(3) LOCAL REGULATIONS. (a) Any town, village or city may, in the interest of public health or safety, adopt local regulations not contrary to or inconsistent with this chapter, relative to the equipment, use or operation of boats or relative to any activity regulated by ss. 30.60 to 30.71, but no such local regulation which in any manner pertains to the equipment, use or operation of a boat on an inland lake is valid unless all towns, cities and villages having jurisdiction on the waters of the lake have enacted an identical local regulation. . . ."

*The ordinances.* The village of Elkhart Lake and the town of Rhine enacted identical ordinances providing:

"No powerboating on Elkhart Lake, during the hours of 12:01 a. m. to midnight on Sundays, beginning the second Sunday in June and ending the third Sunday in September, each year."

*The delegation.* The first question is whether sub. (3) is limited by sub. (2) or delegates an area for local action beyond enactment of ordinances which are in strict conformity with secs. 30.50 to 30.71, Stats., or commission rules enacted pursuant thereto. There would be neither point nor purpose to having sub. (3) at all if it were limited by the subsection which precedes it. Each is a boat that sails on its own bottom. Indeed the jurisdictional requirement in sub. (3) that *all* towns, cities and villages having jurisdiction of a lake enact identical local regulations reveals a legislative realization that differing regulations might be enacted by the various municipalities bordering upon a lake. We read sub. (3) as it is written to confer upon any "town, village or city" the power to adopt local regulations "relative to the . . . use or operation of boats," requiring only that such local ordinance be: (1) A "local regulation;" (2) "not contrary to or inconsistent" with ch. 30 of the state statutes; and (3) be "in the interest of public health or safety." These are the three tests to be met in evaluating an ordinance enacted under sub. (3).

*Local regulation.* The position of appellant is that the ordinance here involved cannot be held to be a "local regulation" because it is in an area of statewide concern.[1] Once established that a local ordinance related to a lake,

[1] "The constitutional authority of cities only extends to local affairs and does not cover matters of statewide concern." *Plymouth v. Elsner* (1965), 28 Wis. 2d 102, 106, 135 N. W. 2d 799; *Van Gilder v. Madison* (1936), 222 Wis. 58, 267 N. W. 25, 268 N. W. 108.

the contention is: It is invalid as being in an area that can only be regulated by the state or an agency of state-wide jurisdiction. In the emerging development of a comprehensive public action program against polluted lakes and waters, this would find a constitutional bar to the delegation of any area or share of authority or responsibility to local units of government. Principal reliance for this contention is upon the *Muench Case*,[2] and the reference in it to the ". . . right to fish and hunt, or to enjoy scenic beauty, as an incident to the right to navigate the navigable waters of this state . . ." as an example of the type of legislation ". . . which affects the interests of the people of the entire state . . . ."[3]

The *Muench Case* dealt with the legislative powers conferrable upon county boards under the applicable constitutional provision.[4] The legislature had by statute provided that, if the county board of the county in which a dam was proposed to be built voted to approve the construction, the public service commission could not deny a permit to build the dam on the grounds that the construction of such dam would violate the public right to fishing, hunting or enjoyment of scenic beauty. The doctrine of "paramount interest" was developed in *Muench* to prevent ". . . the impairment or the destruction of hunting, or fishing, or the right to enjoy scenic beauty on that part of a particular navigable stream lying within the limits of a county . . . ."[5] However, it is a sweeping application of the "paramount-interest" doctrine to find in it a holding with respect to navigable waters, that there is no room left for local action limited to health and safety or similar pressing matters of public concern.

---

[2] *Muench v. Public Service Comm.* (1952), 261 Wis. 492, 53 N. W. 2d 514, 55 N. W. 2d 40.

[3] *Id.* at pages 515f, 515g.

[4] Art. IV, sec. 22, Wis. Const.

[5] *Muench v. Public Service Comm., supra,* page 515g.

Rejecting the claim of a blanket prohibition of any local action as to lakes, claimed to be in *Muench,* the trial court noted the delegation of legislative authority in this area over a period of years.[6] Additionally, the trial court found delegation of authority evidenced in the committee report, a detailed study of boating regulations from which sec. 30.77, Stats., was prepared and recommended for passage.[7] Additionally, the trial court noted

[6] ". . . county boards, over a long period of years, may have legislated in certain fields, pursuant to state statutes delegating such power. In such instances, the historical background should be accorded considerable weight in determining whether a power so exercised by the counties over a long period might not primarily be one of local concern. In other words, the fact, that the counties have been permitted to exercise a certain delegated legislative power over a long period of years, is subject to the inference that the state has recognized that this is a field in which local interests are superior to those of the people of the state as a whole." *Muench v. Public Service Comm., supra,* at page 515h.

[7] ". . . Moreover, *the bulk of boating regulation in Wisconsin in the past has been carried on by towns, cities or villages under their statutory authority to enact reasonable safety regulations* relating to motorboats and the equipment thereof . . . (Emphasis supplied.)

". . . The majority of committee members, however, felt that towns, villages and cities have, in general, been doing a good job of boating regulation and that they should not be deprived of this authority. . . .

"While there were differences of opinion among committee members as to many aspects of local regulation, there was agreement as to at least 2 points: (1) *Conditions vary from one body of water to the next and from one part of the state to another so that there are some problems which must be handled by special local rules,* . . . and (2) local licensing or registration of boats must be prohibited." (Emphasis supplied.)

*Report of the Interim Boating Committee to the 1959 Wisconsin Legislature,* Wisconsin Legislative Council Report, pp. 28, 29.

"At the same time that this section [30.77] provides protection for the boater, it vests in the local authorities a considerable amount of power to enact local boating regulations supplementing the state law. Subjects presently covered by various local or-

that a determination by the legislature of what is a local affair, is to be accorded great weight, and this court has so held.[8] We agree as to the applicability of the rules of construction relied upon by the trial court, but would go further. We would hold *Muench* to its facts, a situation where the authority delegated was that of veto-ing state action furthering the right to fish, hunt and enjoy the scenic beauty. We see a distinction between assigning a right to block advancement of paramount interests, and the delegation of a limited authority or responsibility to further proper public interests. The purpose of the delegation as well as the area of concern in which it is made appear relevant and material on the issue of whether delegation of state authority to local municipalities is proper or permissible.

Appellant cites the *Tolzmann Case*[9] where this court invalidated an ordinance requiring an annual license fee for boats operating within the city's jurisdiction. How-

---

dinances in various municipalities which probably could continue to be regulated to some extent under this section include the placing of buoys and other navigation aids, zoning of the waters to avoid conflicts among the various groups of water users, location of traffic lanes, swimming from boats, races, regattas and exhibitions, skin diving, water skiing, houseboats, speed and horsepower."

4 West's Wis. Stats. Annot., sec. 30.77, p. 570, Interim Committee Report (1959).

[8] *Van Gilder v. Madison, supra,* at pages 73, 74, holding:

". . . In the event of a controversy between municipalities and the state therefore the court is required to make the ultimate determination. In the first instance, the determination of what is a 'local affair' and what is a 'matter of state-wide concern' would seem to be for the legislature for the reason that such a determination must involve large considerations of public policy. Even though the determination made by it should be held not to be absolutely controlling, nevertheless it is entitled to great weight because matters of public policy are primarily for the legislature [cases cited]." *See also: Fond du Lac v. Empire* (1956), 273 Wis. 333, 337, 338, 77 N. W. 2d 699.

[9] *Madison v. Tolzmann* (1959), 7 Wis. 2d 570, 97 N. W. 2d 513.

ever, we view *Tolzmann* as far from helpful. In *Tolzmann,* the city had not the delegated authority, express or implied, to charge a fee for the use of the lake. In *Tolzmann,* a municipal safety ordinance requiring a certain number of life preservers in a boat was upheld. This clearly upheld a local safety regulation, applicable to boaters on a lake, as validly enacted under a constitutional legislative delegation of state authority.

*Inconsistent with.* The second test for a local ordinance enacted pursuant to sec. 30.77 (3), Stats., is that it be ". . . not contrary to or inconsistent with this chapter, relative to the equipment, use or operation of boats or relative to any activity regulated by ss. 30.60 to 30.71 . . . ." Appellant argues that since ch. 30 does not exclude any boat from any waters of this state because of its size, weight, capacity or power (unless overpowered), the clear intent is to permit the safe use of any kind of boat on any kind of pond or lake or stream so long as the boat is properly numbered, lighted and equipped. The argument confuses a safe boat with the safe operation of a boat. The statute prohibits the per se operation of structurally unsafe boats but the reference is to condition and construction, not speed or operation. Actually, the statute specifically recognizes that a structurally safe boat can be unsafely operated by authorizing regulations as to use or operation in addition to equipment, including the reference in sec. 30.77 (3), to "in the interest of public health or safety" regulating "use or operation of boats." Whether, in fact, either public health or safety are served by a prohibition of powerboats on a Sunday is not here ruled upon. That is the exact issue to be determined at the time of trial. All we say here is that a regulation as to safe operation of boats is not contrary to or inconsistent with a prohibition on structurally unsafe boats.

*Health and safety.* The third test as to the validity of any local ordinance passed under sec. 30.77 (3), Stats.,

is that it must be enacted and in fact be "in the interest of public health or safety." Appellant urges that this court hold as a matter of law that no connection can be established by trial between barring powerboats on Sundays and furthering the "interest of public health or safety." The trial court held that whether the exclusion of powerboats on a summer Sunday from Elkhart Lake did further the interest of public health and safety raised substantial and material questions of fact. He did not hold that there was such connection. He held only that a trial was required so that the issue presented could be dealt with on the basis of a record and testimony offered. We agree, holding that the discretionary nature of a trial court's ruling that more facts are required ought, at the summary judgment motion stage, be given great weight, and reversal is indicated only when there has been a clear abuse of discretion.[10] We find no abuse of discretion here.

*Traffic analogy.* As noted very early in this decision, the appellant views a lake, particularly Elkhart Lake, as an exact equivalent of the highways leading to it, equating the banning of powerboating with the excluding of motor vehicles from a highway. So he urges that the strict conformity requirement, applied to local ordinances affecting highway safety, also be applied to boating regulations. It is not necessary to repeat the spelled-out reasons for viewing a lake as a multi-faceted resource, not limited to being a route from one place to another. The difference in basic character and uses between lake and highway give differing scope and dimension to boating as contrasted to vehicular traffic regulations. It is appropriate for appellant to note that this court recently held invalid a city ordinance which made illegal that which the state motor vehicle laws did not prohibit, to

[10] *McConnell v. L. C. L. Transit Co.* (1969), 42 Wis. 2d 429, 435, 167 N. W. 2d 226.

wit: the possession of any fermented malt beverage in the passenger portion of a motor vehicle when a person under the age of twenty-one was present.[11] However, in addition to the distinction between users of a highway and users of a lake, there is a sharp distinction between the statutory language delegating power to adopt local ordinances relating to motor vehicles and sec. 30.77 (3), Stats. There is no equivalent of sub. (3) in the Motor Vehicle Code. Sec. 30.77 (1) (b) provides that a local government may not exclude any boat from the free use of the waters of this state, subject to sub. (3) as one of the two exceptions to the mandate. In the statutory language delegating authority to local municipalities to adopt traffic regulations there is no counterpart to sec. 30.77 (3) empowering local municipal units to adopt local regulations "in the interest of public health or safety." Absent such specific exception for such limited purpose, the conformity requirement justifiably is given a stricter construction. There would be no purpose served or result remaining to the carving out of "health or safety" as an exempted area if the construction urged by appellant were accepted. To do so would be to defeat the established legislative intent to authorize local regulations to meet health and safety problems of a local nature. The uniformity insisted upon as to highways was specifically rejected in sec. 30.77 (3).

*Trust doctrine.* Appellant's attack upon sec. 30.77, Stats., and particularly sub. (3) thereto, includes the contention that the delegation of authority involved is an unconstitutional delegation of the state's trust powers over navigable waters. It is correct to state that, in Wisconsin, the state holds the title to beds underlying navigable waters in trust for all its citizens.[12] The purposes of

[11] *Janesville v. Walker* (1971), 50 Wis. 2d 35, 183 N. W. 2d 158.

[12] *Diana Shooting Club v. Husting* (1914), 156 Wis. 261, 145 N. W. 816.

this trust include all public uses of water.[13] Inland lakes are included in the trust.[14] The trust is derived from both the Wisconsin Constitution [15] and the English common law of public rights in navigable waters. The trust doctrine is not a narrow or crabbed concept of lakes and streams. It appreciates such bodies of water as more than arteries for waterborne traffic. As this court has put it:

"The wisdom of the policy which, in the organic laws of our state, steadfastly and carefully preserved to the people the full and free use of public waters, cannot be questioned. Nor should it be limited or curtailed by narrow constructions. It should be interpreted in the broad and beneficent spirit that gave rise to it in order that the people may fully enjoy the intended benefits. Navigable waters are public waters and as such they should inure to the benefit of the public. They should be free to all for commerce, for travel, for recreation, and also for hunting and fishing, which are now mainly certain forms of recreation. Only by so construing the provisions of our organic laws can the people reap the full benefit of the grant secured to them therein. . . ." [16]

The appellant sees the trust concept as prohibiting a delegation of authority or responsibility to local units of government by the state, even a delegation intended and limited to further the purpose of the trust. We see no conflict of sec. 30.77 (3), Stats., with the trust doctrine, agreeing with the brief of the attorney general, that, "On the contrary, the present sec. 30.77, Stats., is an attempt to further the trust by permitting a limited regulation of competing water uses in the interest of public health and safety, where such regulation is necessitated by the local conditions which prevail. . . ." As the attorney general's brief states, ". . . The point being that this is not a

[13] *State v. Public Service Comm.* (1957), 275 Wis. 112, 118, 81 N. W. 2d 71.

[14] *Colson v. Salzman* (1956), 272 Wis. 397, 75 N. W. 2d 421.

[15] Art. IX, sec. 1, Wisconsin Constitution.

[16] *Diana Shooting Club v. Husting, supra,* at page 271.

defiance or abdication of the trust, but rather an act which is in furtherance of the trust."

*The standards.* While recognizing a difference between delegation to further a trust and a delegation that furthers impairment, the manner of the delegation, as well as the purpose served by it, must be scrutinized. Clear limits as well as definite standards must be provided along with a purpose consistent with advancing the trust.[17] The controlling case on safeguards or standards accompanying a state delegation of authority in furthering a trust is the *Ashwaubenon Case.*[18] There this court considered a challenge to an order of the public service commission which denied approval of a bulkhead line on the lower Fox River adjacent to the town of Ashwaubenon. The line had to meet two statutory requirements: (1) That the bulkhead line be established in the public interest; and (2) that it must conform as nearly as practicable to the existing shores. Although recognizing that the proposed line constituted a greater intervention than had previously been approved in view of the trust doctrine, the court found the trust concept not violated since ". . . [t]he standards prescribed by the legislature constitute adequate protection to the public and, thus, there is no neglect by the trustee of its responsibilities."[19] As to the delegation under sec. 30.77 (3), Stats.,

---

[17] *See Muench v. Public Service Comm.*, *supra*, at page 515m, approving a limited delegation of power by the state to counties and other municipalities to establish shore, dock or pier lines in navigable waters, stating, ". . . the paramount interest of the state is safeguarded. Such a limited delegation of power consistent with the trust is very different in character from that attempted by the 'county board law,' particularly inasmuch as the state retains the power to see that the trust is not vitiated. . . ."

[18] *Ashwaubenon v. Public Service Comm.* (1963), 22 Wis. 2d 38, 125 N. W. 2d 647, rehearing denied, 22 Wis. 2d 38, 126 N. W. 2d 567.

[19] *Id.* at page 50.

as in the delegation involved in *Ashwaubenon,* we view the test of the delegation whether "the standards prescribed . . . constitute adequate protection to the public." Here the safeguarding of the public interest and the trust are sought legislatively to be insured by three requirements: That the ordinance, enacted pursuant to sec. 30.77 (3), be (1) a local regulation; (2) in conformity and not inconsistent with the statute; and (3) in the interest of public health and safety. The question is close and something less than "clear and unmistakable language" [20] has been here used. However, the phrase "in the interest of public health or safety" does establish a limit and guideline. Actually, this court has upheld an ordinance applying to boat safety as a proper delegation of state authority in this exact field where no more specific guidelines were set up. That was in *Tolzmann* where, while striking a license fee ordinance, the court upheld a Madison safety ordinance requiring one life preserver for every passenger in a boat on the Madison lakes.[21] So we uphold as minimally adequate the limits and standards for the enactment of ordinances relating to boating and lakes. However, we feel compelled to alert the legislature to the fact that a sharper delineation of the area the legislature intends shall be available for local regulation insofar as boats, lakes and related problems would be an insurance of the exact legislative intention being carried out. While some degree of flexibility to meet changing conditions is to be maintained, vague-

[20] *Madison v. Tolzmann, supra,* at page 575, stating: ". . . We realize that trustees may delegate some authority. However, in this instance where the state is trustee not only for residents of Wisconsin but for all of the people, such delegation of authority should be in clear and unmistakable language . . . ."

[21] *Madison v. Tolzmann, supra,* at page 572, the court commenting: ". . . It is conceded that the state could delegate to cities authority *to enact safety regulations relating to boats* and the equipment thereof and that it had done so . . . ." (Emphasis supplied.)

ness is no virtue when it comes to the spelling out of areas for state and local action in a particular field. As the pressing public concern for protecting public health, promoting public safety and preserving public resources is predictably reflected in legislative enactments dealing with lakes, rivers and streams, it is crystal clear that, if local units of government are to be given a share of the authority and responsibility for dealing with the problems that arise, a more precise phrasing of what local government can and cannot do would avoid controversy and effectuate the public policy of partnership between various levels of government. On this appeal, we do not reach the issue of whether or not the town of Rhine and village of Elkhart Lake identical ordinances are, in fact, "in the interest of public health or safety." As the trial court properly concluded, that is the question that will be reached and answered after trial and on the record that has been established.

*By the Court.*—Order affirmed.