WILBUR J. SCHMIDT, Secretary Department of Health and SocialServices
You advise that in studying the issues relating to the use of marijuana in Wisconsin the Controlled Substances Board within your department has learned that certain cities in the state have enacted local ordinances relating to the sale and possession of marijuana. In these municipalities offenders are apparently being prosecuted under such local ordinances rather than under the provisions of the Controlled Substances Act, ch. 161, Stats., which also regulates the possession and distribution of marijuana. Since it is believed that such local control carries with it a potential for adverse social and health consequences and a lack of uniformity of control, you request my opinion on the following question:
 "What is the legal status of local ordinances which regulate the sale and possession of controlled substances in the light of the legislative policy stated in Chapter 161, Stats., and what is the authority of local units of government to enforce such ordinances?"
Unless it is concluded that ch. 161, Stats., is intended to provide for exclusive control of the sale, possession and use of marijuana and other drugs and substances or compounds thereof, at the state level of government, additional regulation by city ordinances which do not conflict with state law, would be well within the municipal police power of Wisconsin cities "to act . . . for the government and good order of the city . . . and for the health, safety, and welfare of the public . . . by license, regulation, suppression . . . fine . . ., and other convenient means." Sec. 62.11 (5), Stats. See also 7 McQuillin, Municipal Corporations (1968 Rev. Vol.), p. 79, sec. 24.240.
In considering whether the legislature intended to exclude the application of municipal police power over the same matters as treated by the Uniform Controlled Substances Act, consideration must be given to the nature of the legislative mandate, the structure of the governmental arm empowered to carry out the mandate, the specific legislation delegating the responsibility to the state agency, and the nature and comprehensiveness of the regulatory legislation. Hartford Union High School v. Hartford
(1971), 51 Wis.2d 591, *Page 109 
595, 187 N.W.2d 849. In addressing your question it is also appropriate to consider whether ch. 161, Stats., was intended by the legislature to be construed as an enactment primarily of statewide concern for the purpose of providing uniform state level regulation and control of the sale, possession and use of marijuana and other drugs and substances or compounds thereof.
Both cities and villages possess significant powers to enact local legislation. Art. XI, sec. 3, Wis. Const., and secs. 61.34
(1) and 62.11 (5), Stats. However, the constitutional authority of cities only extends to local affairs and does not cover legislative enactments of statewide concern ". . . as shall withuniformity affect every city or every village . . . ." (Emphasis added.) See Plymouth v. Elsner (1965), 28 Wis.2d 102, 106,135 N.W.2d 799 and Van Gilder v. Madison (1936), 222 Wis. 58,267 N.W. 25, 268 N.W. 108. Further, the determination of what constitute matters of "state-wide concern" or a "local affair" is primarily for the legislature based on considerations of public policy. ". . . In the event of a controversy between municipalities and the state therefore the court is required to make the ultimate determination. * * *" Van Gilder, supra, pp. 73-74. See also Fond du Lac v. Empire (1956), 273 Wis. 333, 337,338, 77 N.W.2d 699.
In addition, whether local legislation is precluded in reference to a particular subject also depends on whether the matter treated is considered to be primarily a local affair or one in which the statewide concern feature is paramount. Muenchv. Public Service Comm., (1952), 261 Wis. 492, 515j,53 N.W.2d 514; State ex rel. Brelsford v. Retirement Board (1968),41 Wis.2d 77, 86, 163 N.W.2d 153. Where potential conflict between state and local rights exists, the court will engage in a balancing of interests to determine whether the state or the local interest is paramount. State ex rel. Hammermill Paper Co. v. La Plante (1973),58 Wis.2d 32, 59, 205 N.W.2d 784.
Finally, we must be mindful that even though a matter may be one of general statewide interest, municipalities may have ample authority to legislate on the same general subject as long as the municipal regulation is not inconsistent or in conflict with the state law. Hack v. Mineral Point (1931), 203 Wis. 215, 221,233 N.W. 82; Fox v. Racine (1937), 225 Wis. 542, 546, 275 N.W. 513;Johnston v. Sheboygan (1966), 30 Wis.2d 179, 140 N.W.2d 247; *Page 110 Muench v. Public Service Comm. (1952), 261 Wis. 492,53 N.W.2d 514.
Chapter 161, Stats., is patterned closely after the model "Uniform Controlled Substances Act," which was promulgated by the National Conference of Commissioners on Uniform State Laws in 1970 to assist in the update and revision of state narcotic, marijuana, and dangerous drug laws. It creates a Controlled Substances Board to administer a coordinated and codified system of classifications for control purposes, establishes rule-making power in the Pharmacy Examining Board relating to the manufacture, distribution and dispensing of controlled substances, describes various prohibited activities relating to the possession, use and transfer of controlled substances, and establishes a variety of administrative and enforcement provisions which set forth a flexible, but detailed, mode of handling violations of the act, which requires the coordination of many state agencies, including the Departments of Justice, Health and Social Services and Public Instruction. In short, it is an impressively comprehensive piece of legislation.
Furthermore, the law is obviously intended as the framework for a unified, coordinated and cooperative attack on drug abuse at all levels of government within the state, and the uniform application of the law at all levels of government appears essential for the law to be effective. As stated by the National Conference in its prefatory note to the model act:
 "This Uniform Act was drafted to achieve uniformity between the laws of the several States and those of the Federal government. It has been designed to complement the new Federal narcotic and dangerous drug legislation and provide an interlocking trellis of Federal and State law to enable government at all levels to control more effectively the drug abuse problem.
 ". . . To assure the continued free movement of controlled substances between States, while at the same time securing such States against drug diversion from legitimate sources, it becomes critical to approach not only the control of illicit and *Page 111 
legitimate traffic in these substances at the national and international levels, but also to approach this problem at the State and local level on a uniform basis." Handbook of the National Conference of Commissioners on Uniform State Laws (1970), pp. 223-224.
It is immediately evident that the crux of ch. 161, Stats., and the key to its effectiveness as a law, lies in the manner in which those who engage in the abuse of controlled substances will be penalized. This is recognized in the declaration of legislative intent set forth in sec. 161.001, Stats., which indicates that the legislature appreciated "a need for differentiation among those who would violate" ch. 161, Stats. The statute further points out that this differentiation should take the form of the possibility of lengthy terms of imprisonment, sentencing designed to produce rehabilitation and provision for special treatment. See secs. 161.41, 161.42, 161.43, 161.46, 161.47, 161.475 and 161.48, Stats. For instance, sec. 161.47 (1), Stats., establishes a special procedure for handling certain first offenders which allows for a conditional discharge and dismissal, without adjudication of guilt, which is not considered a conviction for purposes of disqualifications or disabilities imposed by law upon conviction of a crime. On the other hand, sec. 161.48, Stats., provides for increased criminal penalties for second and subsequent offenses where a person was previously convicted under state or federal law. In addition, sec. 161.475, Stats., provides for the option of providing a treatment program and release from sentence.
It is quite evident from the foregoing that the ends sought to be accomplished by ch. 161, Stats., in differentiating between offenders is intended to be achieved through the uniform application of state law. Municipalities do not possess the same authority as the state to impose the range of penalties and options existing under ch. 161, Stats. For example, local government cannot create crime, and municipal ordinance enforcement is more normally restricted to the imposition of forfeiture. State ex rel. Keefe v. Schmiege (1947), 251 Wis. 79,28 N.W.2d 345. Quite clearly, the imposition of a forfeiture under municipal ordinances adopted by scattered municipalities, instead of the strict application of ch. 161, Stats., in all cases, would tend to defeat both the uniformity and the differentiation in application of the law desired by the legislature. *Page 112 
The suppression of crime has long been considered a matter of statewide concern. Van Gilder v. Madison, supra, pp. 75, 76. That the regulation of drugs is also essentially a matter of statewide concern is clearly recognized in the legislative finding in sec. 161.001, Stats., that "the abuse of controlled substances constitutes a serious problem for society." In fact, our state has already expressly recognized that the regulation of drugs (in the form of alcohol) is a matter of statewide concern. Secs. 66.054 (16) (a) and 176.44, Stats. However, while sec. 66.054 and ch. 176, Stats., both specifically authorize certain local regulation in regard to these specific drugs, ch. 161, Stats., makes no similar delegation of authority to enact local legislation.
Section 161.53, Stats., does indicate that "Violations of this chapter constitute nuisances under ch. 280," but such language makes no provision for the enactment of legislation in the form of local ordinances. In addition, sec. 161.44, Stats., provides:
 "Penalties under other laws. Any penalty imposed for violation of this chapter is in addition to, and not in lieu of, any civil or administrative penalty or sanction otherwise authorized by law."
However, it is evident that the penalties or sanctions "otherwise authorized by law," which are preserved by sec. 161.44, Stats., refer to penalties or sanctions which are "authorized" by other statutory or statewide legislation rather than by ordinance. Volume 4A Words and Phrases, "Authorized by Law," pp. 627-629; Volume 5A Words and Phrases "By Law," p. 810-811.
In conclusion, then, the general policy considerations underlying the promulgation of the Uniform Drug Control Act and the direct legislative policy expressed in sec. 161.001, Stats., and implemented in the balance of ch. 161, Stats., make it apparent that the field of regulation of marijuana and other controlled substances has been clearly identified by the legislature as a matter primarily of statewide concern exclusively occupied by the state. It is my opinion that municipalities may not legislate in this field of regulation, and that ordinances attempting to regulate the sale and possession of controlled substances such as marijuana clearly constitute invalid local legislation in a matter of statewide concern inconsistent and in *Page 113 
conflict with ch. 161, Stats., and the legislative intent and public policy considerations upon which the chapter is based.
RWW:JCM