L.P. VOIGT, Secretary, Department of Natural Resources
You have requested my opinion concerning chemical treatment of aquatic nuisances under permits issued by the Department of Natural Resources in light of opposition from the City of Madison to chemical treatment. Your letter states that riparians along Lake Mendota have applied, under sec. 144.025 (2) (i), Stats., for permits to chemically treat the weed growth along their shorelines. The City Attorney of Madison wrote you stating the City's position that granting such permits would be improper because, among other things, 1) the legislature has granted jurisdiction over Lakes Mendota and Monona to the City of Madison, and 2) that the chemical treatment is contrary to the public policy of the City, as established pursuant to its jurisdiction.
You ask, specifically:
 "1. Generally, does the Department of Natural Resources have authority to grant a permit to an owner of riparian land, or someone retained by him, for control of aquatic nuisances in waters adjacent to his property if the city within which both the property and lake are located has a policy which is contrary to such treatment?
 "2. Has there been a legislative grant of authority, either by original city charter approval or otherwise, which would allow the City of Madison to prevent the issuance of a permit to a landowner in the City of chemical treatment [sic] of Lake Mendota waters adjacent to his property? Would such a delegation of authority be permissable in light of Muench v. Public Service Commission, 251 Wis. 492
(1952) and Menzer v. Elkhart Lake, 51 Wis.2d 70 (1970)?
 "3. Assuming that the City of Madison has general police power jurisdiction over Lake Mendota to its high water mark, could the City then prevent an owner of riparian land outside the City limits (e.g., Maple Bluff or Middleton) from receiving a permit from the Department to chemically treat Lake Mendota waters for aquatic nuisances? *Page 262 
 "4. More generally, may the Department deny an application, made pursuant to Section 144.025 (2) (i), Wisconsin Statutes, for aquatic nuisance control where the applicant complies with all statutes and administrative rules enforced by this Department or the Department of Agriculture which relate to the use of pesticides? (Note: see Section 29.29 (4) and 94.69 (9), Wisconsin Statutes, and Chapters NR 80 and 107, and Ag. 12, Wisconsin Administrative Code, for provisions relating to pesticide use.)"
1. DNR AUTHORITY TO CONTROL AQUATIC NUISANCES
With respect to the first question, it is my opinion that the Department of Natural Resources does have authority to grant a permit to chemically control aquatic nuisances notwithstanding a municipal policy contrary to such treatment. Section 144.025 (2) (i), Stats., authorizes the Department of Natural Resources to:
 ". . . supervise chemical treatment of waters for the suppression of algae, aquatic weeds, swimmers' itch and other nuisance-producing plants and organisms. . . ."
Certainly a city cannot lawfully forbid what the legislature has expressly licensed, authorized, or required. Fox v. City ofRacine (1937), 225 Wis. 542, 275 N.W. 513. Here the legislature has expressly authorized the chemical treatment of state waters for the purpose of controlling aquatic nuisances. Sec. 144.025 (2) (i), Stats. This section was first enacted by ch. 614, sec. 37, Laws of 1965.
The City of Madison has, however, adopted a resolution, January 12, 1971, resolving:
 "that it is the policy of the Common Council of the City of Madison to prohibit city departments or subdivisions thereof the application of all herbicides and chemicals in Madison lakes except for reasons of public health as determined by the health department"
and further,
 "that the city reject the annual blanket permit granted by the State of Wisconsin, Department of Natural Resources for the *Page 263 
purpose of allowing individuals or governmental units to apply herbicide or chemical treatment to the Madison lakes"
and further,
 "that the City of Madison file with the Department of Natural Resources a permanent objection for issuance of a permit for individuals or governmental units to apply herbicides or chemicals to Madison lakes."
In light of the Department's authority under sec. 144.025 (2) (i), this city policy has no legal effect. In an analogous situation, a former opinion of this office, 60 OAG 523 (1971), concluded that the Department of Natural Resources had authority to require a municipality to construct a public water supply system pursuant to sec. 144.025 (2) (r), Stats., even though the town had rejected such plan by referendum.
While the City of Madison's policy is not binding upon the Department, it may be considered as a factor in the decision-making process in the spirit of sec. 144.025 (1), which states:
 "[I]t is the express policy of the state to mobilize governmental effort and resources at all levels, state, federal and local, allocating such effort and resources to accomplish the greatest result for the people of the state as a whole."
2. DELEGATION OF AUTHORITY TO MADISON
In response to your second question, I have concluded that the City of Madison has no jurisdictional authority to prevent the issuance of permits to riparians for chemical treatment of adjacent waters. Fox v. Racine, supra.
Special acts of the legislature creating the city of Madison gave the city some jurisdiction over the lakes bordering on the city. These charter provisions were repealed by sec. 62.02, Stats., Laws of 1921, ch. 242, sec. 2. Whatever powers may have survived relating to the municipal management and control of navigable waters by virtue of sec. 62.04 and sec. 62.11 (5), Stats., the state has preempted this area by legislative enactments, particularly chs. 29, 30, 31, 144, and 147, Stats. Neither the special charter provisions nor sec. 62.11 (5), reserve to the City of Madison the authority to frustrate the Department of Natural Resources' role in supervising the "chemical *Page 264 
treatment of waters for the suppression of . . . nuisance-producing plants and organisms." See Department of NaturalResources v. Clintonville (1971), 53 Wis.2d 1, 4,191 N.W.2d 866, which cites Muench v. Public Service Commission (1952),261 Wis. 492, 53 N.W.2d 514, 55 N.W.2d 40, as authority that "the state must maintain pre-eminence in the control of navigable waters in this state."
Section 62.11 (5) was also interpreted in City of Madison v.Tolzmann (1959), 7 Wis.2d 570, 97 N.W.2d 513, in which the Supreme Court struck down a Madison ordinance which required boats to be registered with the Chief of Police after payment of a license fee. The court held that Madison's special charter contained no authority to enact such an ordinance. The court also noted that sec. 62.11 (5), Stats., was enacted as enabling legislation after the adoption of the home-rule amendment to the Constitution. Art. XI, sec. 3, Wis. Const. That amendment granted power to cities in all local affairs, but not in matters of statewide concern. Madison v. Tolzmann, supra, at 573.
An example of a local concern is health and safety regulations. In Menzer v. Elkhart Lake (1971), 51 Wis.2d 70, 186 N.W.2d 290, the court upheld municipal boating regulations adopted under the specific delegation in sec. 30.77, Stats. These regulations were required not only to be in the interest of health and safety, but also to be consistent with the applicable statutes and guidelines. Here, in contrast, the legislature never expressly authorized municipalities to enact aquatic nuisance control ordinances. Furthermore, Madison's policy is in direct conflict with sec. 144.025 (2) (i), Stats., which grants the Department supervisory authority over aquatic nuisance control.
In discussing the relationship between matters of local and statewide concern, the court in Van Gilder v. City of Madison
(1936), 222 Wis. 58, 267 N.W. 25, 268 N.W. 108, said:
 "The powers of municipalities are subject to the limitation that the municipality cannot by its charter deal with matters which are of state-wide concern and its power to enact an organic law dealing with local affairs and government is subject to such acts of the legislature relating thereto as are of state-wide *Page 265 
concern and affect with uniformity all cities. Van Gilder, supra, at 73.
 "When the legislature deals with matters which are primarily matters of state-wide concern, it may deal with them free from any restriction contained in the home-rule amendment." Van Gilder, supra, at 84.
Thus, the legislature can deal with the waters of the state free from any restriction contained in the homerule amendment and sec. 62.11 (5), Stats. Conversely, the City of Madison is restricted from dealing with matters of statewide concern. It is well established that the navigable waters of the state are a matter of statewide concern. Madison v. Tolzmann, supra, at 575, 576; Fond du Lac v. Town of Empire (1956), 273 Wis. 333, 338,77 N.W.2d 699. Furthermore, legislative enactment of sec. 144.025 (2) (i) deems aquatic nuisance control a matter of statewide concern. Consequently, whatever authority there is granted by virtue of sec. 62.11 (5) does not extend to the supervision of aquatic nuisance control.
3. RIPARIANS OUTSIDE MADISON
The answer to your third question cannot assume, as your question suggests, that the City of Madison has general police power jurisdiction superior to that of the Department of Natural Resources. This issue was resolved above to the effect that, while Madison has been delegated limited jurisdiction over the navigable waters within its boundaries, it is subject to the broader authority of the Department of Natural Resources in the area of aquatic nuisance control. Thus, the City could not prevent a riparian outside the city limits, acting under DNR supervision, from treating his shoreline with weed-killing chemicals.
4. DENIAL OF PERMITS
Your fourth question asks whether the Department may deny permit applications which would comply with all applicable statutes and administrative rules. This question assumes that there is a great body of statutes and rules regulating chemical treatment of aquatic nuisances. Actually, the pertinent administrative rules are skeletal. NR 80.03 (10) and Ag 20.12 (2), Wis. Adm. Code, specifically exempt applicants for permits issued under sec. 144.025 (2) (i), Stats. The rules set out inNR 107, Wis. Adm. Code, deal essentially *Page 266 
with application forms and fees and supervisory fees. Hence, there presently are few substantive rules with which prospective applicants must comply.
While the legislature has determined that chemical treatment is a proper method to control aquatic nuisances, sec. 144.025 (2) (i), Stats., the Department of Natural Resources' supervision of such treatment must be exercised in light of the policy and purpose set out in sec. 144.025 (1), Stats.
 "The Department of Natural Resources shall serve as the central unit of state government to protect, maintain and improve the quality and management of the waters of the state, ground and surface, public and private. Continued pollution of the state has aroused widespread public concern. It endangers public health and threatens the general welfare. A comprehensive action program directed at all present and potential sources of water pollution . . . is needed to protect human life and health, fish and aquatic life, scenic and ecological values and domestic, municipal, recreational, industrial, agricultural and other uses of water. The purpose of this act is to grant necessary powers and to organize a comprehensive program under a single state agency for the enhancement of the quality, management, and protection of all waters of the state, ground and surface, public and private."
While the legislature gave the Department a great deal of discretion in its supervision of weed control, it has at the same time charged the Department to guard the trust and to carry out the purposes of sec. 144.025 (1), Stats. Hence, in reviewing applications for permits to chemically treat aquatic nuisances, the Department must consider not only the statutes and administrative rules, but must also, in the exercise of this supervisory function, bear in mind the ultimate purpose which sec. 144.025 (1) and other appropriate statutes and rules are designed to promote. Even if an applicant would be in compliance with the letter of the statutory and administrative requirements, his permit may be denied if the Department finds that application of chemicals to the state's navigable waters would be counter-productive in achieving the goals of ch. 144, i.e., to "protect, maintain and improve the quality and management of the waters . . . to direct a comprehensive program at *Page 267 
all present and potential sources of water pollution . . . to protect human life and health, fish and aquatic life, scenic and ecological values and domestic, municipal, recreational, industrial, agricultural and other uses of water."
The decision to grant or deny permits, however, would be subject to judicial review. Though not a "contested case" within the meaning of sec. 227.01 (2), Stats., denial of a permit application is nonetheless reviewable, Town of Ashwaubenon v.Public Service Commission (1963), 22 Wis.2d 38, 46,125 N.W.2d 647, 126 N.W.2d 567. Section 227.15, Stats., referring to judicial review, contains no requirement of a "contested case" or a "hearing required by law." Judicial review would proceed on the record which, though not as full as when a hearing has taken place, may consist of interdepartmental correspondence and files.Id. at 47. Denial of permit applications may be accompanied by findings of facts in order to assist judicial review.
In summary, it is my opinion that, while the Department of Natural Resources has ultimate supervision over chemical treatment of aquatic nuisances in Madison lakes, the Department must exercise its function in light of the public trust and the purposes set out in sec. 144.025 (1).
RWW:LMC